EDMONDS, Conservatrix of the Estate of Vivian G. Edmunds *v.* LUPTON, et ux.

[No. 175, September Term, 1968.]

*Decided April 3, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, SINGLEY and SMITH, JJ.

*Jules G. Körner, III,* with whom were *Körner, Doyle, Worth & Crampton* on the brief, for appellant.

*William C. Staley* for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal involves the construction of Maryland Rule 314 a 1, with particular reference to whether or not the "bill of com-

plaint" or petition filed by the appellees, Thomas F. Lupton and Laura Lee Lupton, his wife (the Luptons), in the Circuit Court for Montgomery County, against the appellant Elizabeth H. Edmunds, Conservatrix of the Estate of Vivian G. Edmunds, asserted a "claim" against the conservatrix, and whether or not the appellant and appellees were "opposing parties" within the meaning of Rule 314 a 1.

The appellant was appointed as conservatrix of the estate of Vivian G. Edmunds by the Circuit Court for Montgomery County in a case entitled "In re Vivian G. Edmunds", Equity No. 27833, on January 23, 1964. She duly qualified as conservatrix. By an order of the Circuit Court dated April 30, 1965, she was also made responsible for the personal welfare of Vivian G. Edmunds.

On December 13, 1967, the Luptons filed a "bill of complaint" for an order to show cause (the words "bill of complaint" in the heading are stricken out and the word "Petition" is inserted in pencil) in the pending equity case, No. 27833, in which the Luptons describe themselves as "petitioners." The petition alleges that Thomas F. Lupton "is the nephew of Vivian G. Edmunds, whose estate is being administered in this proceeding" and Laura Lee Lupton is his wife; that the only other heir at law and next of kin of Vivian Edmunds is Beth Meade Edmunds McCoy, the daughter of the conservatrix; that the petitioners throughout the years had enjoyed a warm relationship with Vivian, who had stayed at their home in Plantation, Florida, for a portion of the year 1966, and Vivian had corresponded with them at fairly regular intervals, but such correspondence had ceased recently; that Vivian is residing presently at the Fairland Nursing Home in Silver Spring; that recently the petitioner Laura Lee Lupton had come to Silver Spring to visit her daughter and Vivian; that the nursing home had refused her entry for the purpose of visiting Vivian and refused to allow her to communicate with Vivian by telephone, and the Luptons believe that the nursing home is discouraging Vivian from writing to them; that the petitioners "also believe and aver that the actions taken by the Fairland Nursing Home are a direct result of the orders and instructions of Elizabeth H. Edmunds, conservatrix"; and that the petitioners are concerned

for the welfare of Vivian, desire to visit her and "believe and aver that the denial of visitation with Vivian G. Edmunds is unjustifiable and without merit."

The three prayers for relief in the petition were that:

1. The court permit the petitioners to visit Vivian at the nursing home for a reasonable time during regular visiting hours.

2. The court "issue an order to show cause to Elizabeth H. Edmunds why the relief prayed should not be granted."

3. The court grant other and further relief.

Upon this petition, the Circuit Court for Montgomery County (Shure, J.) signed an order on December 22, 1967, which ordered that the Luptons be permitted to visit Vivian at the nursing home for a reasonable time during regular visiting hours "unless cause to the contrary be shown on or before the 26th day of January, 1968 at 10:00 a.m., provided a copy of this order be served upon Elizabeth H. Edmunds, conservatrix of the estate of Vivian G. Edmunds on or before the 16th day of January, 1968."

The show-cause order having been served upon the conservatrix she filed an answer and counterclaim as conservatrix on January 18, 1968. In the answer, the conservatrix admitted certain allegations in the petition, denied others including the allegation that the petitioners were refused visitation rights with Vivian by the conservatrix, but averred that the conservatrix did instruct the nursing home that any visit of the petitioners to Vivian "be conditioned upon there being a representative of * * * [the] conservatrix" with Vivian during the course of such a visitation. The conservatrix further alleged that she had imposed this condition for five reasons: (1) the petitioners had not paid a final judgment for $950.00 obtained by the conservatrix against them in Florida; (2) the petitioners and the conservatrix are adverse parties in a will contest now pending in Florida; (3) the petitioners and conservatrix are adverse parties in an action in Florida to recover the proceeds of a bank account held by Vivian; (4) it had been necessary for the conservatrix to institute a habeas corpus action in Florida in or-

der to obtain Vivian's release from her visit to the petitioners; and (5) that because of Vivian's deteriorating physical and mental condition, plus the above four reasons alleged, the conservatrix was under an obligation to have someone present to protect her ward's interest during any visitation by the petitioners.

In the counterclaim immediately following the answer, the conservatrix alleged that a counterclaim was permitted under Rule 314 a; that the conservatrix was duly appointed as conservatrix, resides in Maryland and "makes this counterclaim on behalf of her ward in such capacity;" that Laura Lee Lupton is a niece by marriage of Vivian; that Vivian and her sister Marie E. Lupton opened a joint bank account in the Equitable Savings & Loan Association, a District of Columbia banking organization in 1951; that the conservatrix was appointed as conservatrix for Vivian in April 1964, but notwithstanding that appointment Marie attempted to withdraw some of the money from the account, but was informed by the Association that in order to do this without the passbook, the signature of the other joint depositor would be required; that the Association subsequently received certain forms signed by both depositors, issued its check on February 15, 1965 for $3,450.46, the entire balance of the account, payable to Vivian and Marie; that the check was later endorsed by Vivian and Marie and also by Laura Lee Lupton and was collected by Laura Lee Lupton on or about February 21, 1965; that Marie died on April 5, 1965; that all of the funds in the account except interest credited, had been contributed by Vivian; that Laura Lee Lupton alleges that the proceeds of the check were used for room, board and incidental expenses of Vivian from February 21, 1965 until May 20, 1965 while Vivian was residing with the petitioners at their home in Plantation, Florida; that Laura Lee Lupton had made no further accounting to the conservatrix in regard to how the funds were expended; and, that the conservatrix believes it unlikely the $3,450.46 would be required for the room and board of Vivian during the three month period Vivian resided with the petitioners. It was prayed that (1) the petitioners be required to account to the conservatrix as to how the proceeds of the check were expended; (2) to the extent not expended for the ward, Vivian, that the conservatrix have judgment against the peti-

tioners, jointly and severally; (3) the conservatrix have other and further relief.

The answer and counterclaim were served on the Luptons by mail on their attorney, pursuant to Maryland Rule 306 c 1.

On January 30, 1968, counsel for the Luptons filed a "line" in the proceedings directing the clerk to "mark the petition of Thomas F. Lupton and Laura Lee Lupton for an order to show cause 'Settled and Off,' " and on February 2, 1968, filed a motion raising preliminary objections to the counterclaim of the conservatrix pursuant to Maryland Rule 323 a 2. This motion recited that the petitioners were residents of Florida; that they had not been previously served in Maryland with the counterclaim, but that jurisdiction over them was attempted by the conservatrix by serving it on their attorney of record; that under Rule 314 a 1, the Luptons were not "opposing parties" and no "claim" had been filed against them by the conservatrix and no part of the petition "concerned itself with the merits of the conservatrixship;" and that under the constitution and laws of Maryland and the due process clause of the Fourteenth Amendment of the Federal Constitution, the petitioners "may not be served in this action." A hearing was requested on the motion.

The conservatrix, on February 15, 1968, filed an opposition to the motion to quash alleging that the petition had alleged certain wrongful acts by the conservatrix with respect to her ward; that a show-cause order was directed against her, as conservatrix; that the service on the petitioners was in accordance with Rule 306 c 1; and, that there was no merit in the contentions of the petitioners that they were not "opposing parties", or that the Luptons had not "asserted a claim" against the conservatrix within the meaning of Rule 314 a 1.

The Chancellor filed a memorandum on May 13, 1968, indicating that, in his opinion, the Luptons were not opposing parties and did not assert a claim against the conservatrix. He passed an order the same day quashing the service upon the Luptons and a timely appeal was taken from that order by the conservatrix.

We are of the opinion that the Chancellor was in error and we will reverse the order of May 13, 1968.

The relevant portion of Rule 314 entitled, "Counterclaim and Cross-claim" is as follows:

"a. *Counterclaim.*
    1. Right to plead counterclaim.
    In any action by any party, against whom a *claim,* counterclaim, cross-claim or third-party claim has been asserted, may plead as a counterclaim *any claim* he has against *any opposing party."* (Emphasis supplied.)

Maryland Rule 314 a 1 is modeled on Federal Rule of Civil Procedure 13(b) in regard to permissive counterclaims. Maryland Rule 314 a 1 substitutes for the words "A pleading may state as a counterclaim" in Federal Rule 13 (b), the language "In any action any party against whom a claim, counterclaim, cross-claim or third-party claim has been asserted, may plead as a counterclaim * * *." The important language, however, is the same, i.e., that "any claim" may be asserted "against any opposing party." We have indicated that under these circumstances, this Court will find persuasive the decisions of the Federal Courts construing the provisions of the Federal Rule from which the language of the Maryland Rule is taken. *White v. Friel,* 210 Md. 274, 285, 123 A. 2d 303, 308 (1956) ; *Frush v. Brooks,* 204 Md. 315, 321, 104 A. 2d 624, 626 (1954). Cf. *Funger v. Mayor & Council of Somerset,* 244 Md. 141, 150, 233 A. 2d 168, 173 (1966).

The purpose of Federal Rule 13 (b) is stated in 6 Cyclopedia of Federal Procedure (Third Edition, 1966 Revised Volume) § 16.15 at pages 25-26, as follows:

> "The purpose of thus uniting independent claims is plainly to facilitate adjustments and to diminish litigation."

In the same volume, it was stated in regard to the scope of Federal Rule 13 (b):

> "In view of the virtually unlimited scope of counterclaims available under Rule 13 (b), at least, there is no particular point to attempting an exhaustive general analysis as to what counterclaims are proper in particular cases and situations." (*Id.* § 16.27 at 42.)

The federal decisions have given a broad construction to the right to counterclaim under Federal Rule 13 (b). See for example, the following cases:

*Kuenzel v. Universal Carloading & Distributing Co.,* 29 F. Supp. 407 (E.D.Pa. 1939) holding that in an action involving a complaint asserting an alleged libel, it was proper to counterclaim for goods sold and delivered; *Schram v. Lucking,* 31 F. Supp. 749 (E.D.Mich. 1940), aff'd, 117 F. 2d 160 (6th Cir. 1941) involving an action by the receiver of a national bank to enforce assessments on bank stock, in which the defendants were allowed to file a counterclaim for damages and rescission of the contract whereby they acquired the stock; and, *Abraham v. Selig,* 29 F. Supp. 52 (S.D.N.Y. 1939), in which the complaint was filed by a partnership, and the defendants were permitted to assert a counterclaim against the partners in *their individual capacity.*

We now consider whether or not the Luptons asserted a "claim" against the conservatrix in their petition. It is clear that the word "claim" is used in a broad sense in the Federal Rules of Civil Procedure. As Judge Singley recently stated, for the Court, in *White v. Land Homes Corp.,* 251 Md. 603, 610-11, 248 A. 2d 159, 163 (1968), in construing the word "claim" as used in both Maryland Rule 315 and Federal Rule 14 dealing with third-party practice:

> "[T]he concept of a 'claim' * * * has been defined as a 'group or aggregate of operative facts giving ground or occasion for judicial action; as distinguished from the narrow concept of a 'cause of action.' " (Citing 3 Moore, Federal Practice (2d Ed. 1968) § 14.07 at 509, and Clark, *The Cause of Action,* 82 U.Pa.L. Rev. 354 (1934).)

See also, to the same effect, *United States v. Iroquois Apartments, Inc.,* 21 F.R.D. 151, 153 (E.D.N.Y. 1957).

In 14 C.J.S. *Claim,* pp. 1182-83 (1939), "Claim" is defined as follows:

> "In what has been termed its primary meaning, or in its ordinary or usual sense, the word is a broad and

comprehensive term, and in its legal use has been understood in a somewhat enlarged sense, embracing every species of legal demand, not necessarily limited to money demands; * * *."

It seems clear in the present case that the Luptons were asserting a "claim" against the conservatrix within the meaning of Maryland Rule 314 a 1. Their petition alleges certain wrongful acts on the part of the conservatrix and invoked the aid of the equity court in the pending equity case in which the conservatrix had been appointed both conservatrix of Vivian's estate, and also as custodian or guardian of her person. The Luptons were asserting that they had rights of visitation of the ward of the conservatrix which the conservatrix was allegedly violating. If the Luptons had been successful, the Chancellor would have required the conservatrix to take appropriate action pursuant to a negative or mandatory injunction or order and the conservatrix would have been liable for contempt had she disobeyed the injunction or order. The petition, in our opinion, stated a "claim" by the Luptons against the conservatrix.

The Luptons earnestly contend, however, that in any event the Luptons and the conservatrix were not "opposing parties" within the meaning of Rule 314 a 1, principally on the theory that they were not asserting a claim against the estate of the ward. We do not agree with this contention. As we have indicated, the conservatrix was not only conservatrix of Vivian's estate but was also guardian of her person. The Luptons sought equitable relief against the conservatrix and she was required by the Chancellor to show cause why the relief should not be granted. She did show cause in her answer. She was a party to the proceedings and she was most certainly an "adverse" party as the answer indicates. Under these circumstances we have no difficulty in concluding that the conservatrix was an "opposing party" within the meaning of Rule 314 a 1, and entitled to file a counterclaim against the Luptons.

The Chancellor in his opinion relied on *First National Bank v. Johnson County National Bank and Trust Co.,* 331 F. 2d 325 (10th Cir. 1964) in support of his conclusion that the Luptons were not "opposing parties" within the meaning of the rule. In

our opinion, this reliance was misplaced. In *First National Bank,* the plaintiffs against whom a counterclaim was asserted had filed an *interpleader action* under Federal Rule 54 (b), depositing the fund in the registry of the court and was a disinterested party who was not asserting a right against any one. In a dictum, the court stated that a counterclaim alleging a conspiracy on the part of the plaintiffs and others to defraud one of the parties could not be asserted by way of counterclaim against the plaintiffs, inasmuch as the plaintiffs were not "opposing parties" within the meaning of Federal Rule 13, since the plaintiffs had not asserted a "claim" against the counterclaimant. As we have indicated, the Luptons were interested parties seeking affirmative relief on their own behalf against the conservatrix, so that the *First National Bank* case is clearly distinguishable from the present case.

We find the decision in *Legate v. Maloney,* 348 F. 2d 164 (5th Cir. 1965) persuasive on this point. In *Legate,* the Security and Exchange Commission filed a petition against a brokerage partnership for the appointment of a receiver, and a receiver was appointed. The New York Stock Exchange appeared in the receivership proceeding through counsel, and sought to recover upon claims of public creditors which it had paid off and from whom it had taken assignments. One of the limited partners, Legate, filed a counterclaim against the New York Stock Exchange for damages resulting from his becoming a limited partner and his subsequent losses caused by alleged malfeasance and nonfeasance of the Exchange. It was held that Legate had the right to file the counterclaim inasmuch as the Exchange had in effect become the real party in interest in the receivership proceeding by its intervention and assertion of claims and thus had become an "opposing party", so that Legate could assert his counterclaim pursuant to Federal Rule 13 (b).

In the instant case, the Luptons were properly before the equity court in the conservatrix proceedings and affirmatively sought relief against the conservatrix. They were "opposing parties" to her within the meaning of Maryland Rule 314 a 1.

The entry of the "line" by the Luptons directing the clerk to mark the petition of the Luptons "Settled and Off", had no

effect upon the counterclaim as it is well settled that where a counterclaim seeks affirmative relief, as does the counterclaim in the present case, the counterclaimant may maintain the counterclaim regardless of what may happen to the original claim. *Isenberg v. Biddle,* 125 F. 2d 741, 743 (D.C.Cir. 1941).

> *Order of May 13, 1968 reversed and case remanded for further proceedings on the counterclaim of the conservatrix, the appellees to pay the costs.*