COTHAM *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, MARYLAND

[No. 15, September Term, 1970.]

* * *

MALDONADO *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, MARYLAND

[No. 266, September Term, 1970.]

*Decided February 2, 1971.*

557

*Motion for rehearing filed March 2, 1971; denied March 3, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*William L. Kaplan,* with whom were *Karl G. Feissner, Thomas P. Smith, Fred R. Joseph, Andrew E. Greenwald* and *Feissner, Kaplan & Smith* on the brief, for appellant Durley Cotham.

*Joseph Montedonico,* with whom were *Edward C. Dona-hue, William A. Ehrmantraut* and *James P. Gleason* on the brief, for apellant Benjamin Maldonado, Jr.

*James P. Salmon,* with whom were *Jerrold V. Powers* and *Sasscer, Clagett, Powers & Channing* on the brief in No. 15 and *Sasscer, Clagett, Channing & Bucher* on the brief in No. 266, for appellee.

SMITH, J., delivered the opinion of the Court.

We are here called upon to decide the proper interpretation of what is now Code (1970 Cum. Supp.), Art. 57, § 18 relative to the notice required of claims against cer-

tain counties in a situation where the plaintiff's declaration does not recite giving the notice within the statutory period, but says "upon discovery of the negligence of the Defendants [she] gave timely notice." We are also obliged to construe the statute relative to its application to a third party claim. The facts are not in dispute.

Durley Cotham (Cotham), appellant in No. 15, was a patient in Prince George's County General Hospital in September, 1966, and for some time subsequently. It is an institution operated by the County Commissioners of Prince George's County.[1] She filed suit against the County

1. This is the same hospital involved in the case of Thomas v. Prince George's County, 200 Md. 554, 92 A. 2d 452 (1952), in which the Court affirmed the decision of Judge Gray in the Circuit Court for Prince George's County sustaining a demurrer to the declaration on the ground of governmental immunity. It developed in the course of argument there that counsel for the county were counsel for an insurance company "conducting the defense pursuant to a policy of insurance for less than the amount of plaintiff's claim". The case was remanded to permit the circuit court to consider the applicability to the action of Code (1951), Art. 48A, § 82 (Chapter 900 of the Acts of 1947). That section provided:

"Each policy issued to cover the liability of any charitable institution for negligence or any other tort shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such institution is immune from liability on the ground that it is a charitable institution."

This is the same provision which is now found in Code (1968 Repl. Vol.), Art. 48A, § 480. Upon the remand, Judge Marbury (later a member of this Court) made a determination:

"[I]f the insured is both a governmental agency and a charitable corporation the insurer is estopped from asserting that the insured is exempt as a charitable institution, and being a charitable institution the fact that it was also a governmental agency makes no difference in the application of Section 82; so that the answer to defendant's (c) ground of demurrer ['That Sec. 82 with respect to policies of liability insurance covering charitable institutions for negligence can not be construed to include a corporation engaged in a governmental function.'] is that this Section with respect to policies of liability insurance covering charitable institutions for negligence can be construed to include a corporation engaged in a governmental function."

That case ultimately was settled. Therefore, there was no appeal from that decision. Apparently, counsel in that county have proceeded since then upon the strength of that opinion.

The matter of hospital liability since June 1, 1966, has also been covered by Code (1970 Cum. Supp.), Art. 43, § 556A which provides:

"No hospital or related institution as defined in this sub-

Commissioners of Prince George's County (County) and Dr. Benjamin Maldonado, Jr., on August 21, 1969. In the amended declaration she said:

> "Plaintiff, upon discovery of the negligence of the Defendants, gave timely notice in accordance with Article 57, Section 18 of the Maryland Code to the Defendant, Board of County Commissioners for Prince George's County, Maryland, said notice having been sent by certified mail, the 19th day of May, 1969."

To this declaration the County filed a demurrer on the ground "the amended declaration does not allege that the notice prescribed by Article 57, Section 18, of the Annotated Code of Maryland was duly presented." Code (1970 Cum. Supp.), Art. 57, § 18 has been amended several times since the occurrence of this incident, but the provision applicable to this incident remains basically unchanged. It now reads:

> "No action shall be maintained and no claim shall be allowed against [Prince George's

---

title shall be immune from liability for negligence or any other tort on the grounds that it is a charitable institution; provided, however, that a hospital or related institution which is a charitable institution and which is insured against such liability in an amount not less than $100,000 shall not be liable for damages in excess of the limits of such insurance."

In Bd. of Education v. Alcrymat Corp., 258 Md. 508, 266 A. 2d 349 (1970), we held on the issue of governmental immunity where a motion raising preliminary objection had not been filed pursuant to the mandate of Maryland Rule 323 b:

"[T]he law is well established that counsel for the State or one of its agencies may not either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity in the absence of express statutory authorization, or by necessary implication from a statute * * *." Id. at 516.

In both of the cases at bar there have been motions filed raising preliminary objection "on the ground of partial, charitable or governmental immunity" with the memoranda of points and authority stating that the claimed damages exceed the limit of available insurance and that the motion is filed as to any liability over and above that for which applicable liability insurance is carried.

In accordance with that rule, action on the motion is postponed until after trial of the action on its merits.

> County] for unliquidated damages for any injury or damage to person or property unless * * * written notice thereof setting forth the time, place or cause of the alleged damage, loss, injury or death shall be presented * * * to the county commissioners * * *."

and then goes on since 1967 to provide that the notice must be presented within 180 days "after the injury or damage was sustained". At the time of this hospitalization the provision relative to Prince George's County was 90 days. Judge Loveless sustained the County's demurrer without leave to amend. Pursuant to Maryland Rule 605 a, he made "an express determination that there [was] no just reason for delay" and directed that judgment be entered in favor of the County against Cotham for costs. We shall affirm this judgment.

Dr. Maldonado, appellant in No. 266, filed a third party claim for indemnification against the County. His declaration did not mention any notice to the County under § 18. The County likewise demurred to the third party claim on the basis that it did "not allege that the notice prescribed by Article 57, Section 18, of the Annotated Code of Maryland was duly presented." Judge Meloy sustained the demurrer. He likewise made a determination under Rule 605 and directed entry of judgment in favor of the County against Dr. Maldonado for costs. We shall reverse that judgment.

We are presented with two specific questions. The first is whether there is any exception in this notice provision where, as it is claimed here, the injury was not immediately discovered. In the posture in which the case reaches us the well pleaded facts are that Cotham was a patient at the hospital for quite some period of time and that she gave "timely notice" upon "discovery of the negligence". It was conceded at argument that her condition was apparent at the time of her discharge from the hospital more than a year prior to the notice here given and that the negligence was discovered when counsel was consulted

on her behalf. The case is decided upon that premise. The second question has to do with whether notice is required in the matter of a third party claim and if so, when it is required to be given.

## I.

Cotham calls to our attention *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A. 2d 825 (1966), in which this Court said:

> "On reason and principle and the authority of *Hahn* [*v. Claybrook*, 130 Md. 179, 100 A. 83 (1917)] and cases of like import elsewhere which have been cited and referred to, we conclude that the right of action for injury or damage from malpractice may accrue when the patient knows or should know he has suffered injury or damage. In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue." *Id.* at 145.

He might well have also referred to *Mattingly v. Hopkins*, 254 Md. 88, 253 A. 2d 904 (1969), a case involving a surveyor, and *Mumford v. Staton, Whaley & Price*, 254 Md. 697, 255 A. 2d 359 (1969), a case involving an attorney. To refer to any of these cases, however, as authority for application of the discovery theory contended for to this situation overlooks the basic difference in the posture of the cases. Those cases involved application of Code (1957), Art. 57, § 1 providing for the bringing of suits within a given period of time "from the time the cause of action accrued". Each of those cases held that in a mal-

practice suit the cause of action accrues and the statute begins to run when the injuries are noted, although re-iterating the rule relative to contracts generally that the statute begins to run from the date of the alleged breach. The last sentence of *Waldman* on the facts of this case as conceded at argument would actually be authority for holding for the County.

We here start with the proposition that counties and municipalities are creatures of the State or, as it was put in *Daly v. Morgan,* 69 Md. 460, 467, 16 A. 287 (1888), "Cities and counties are but local divisions of the State, organized and chartered for the more efficient and eco-nomical administration of the government." Or, as Judge Delaplaine put it in *Neuenschwander v. Wash. San. Com.,* 187 Md. 67, 48 A. 2d 593 (1946) :

> "It is universally recognized that every munici-pal corporation is subject to absolute control by the Legislature. However great or small its sphere of action, it remains the creature of the State exercising privileges and powers subject to the sovereign will." *Id.* at 74.

At another point, in considering the statute we here have under consideration, he said :

> "It is a fundamental doctrine that the Legis-lature may grant or deny to individuals a right of action against municipal corporations for in-juries resulting from the negligent manner in which streets are maintained. When the Legis-lature creates a municipal corporation as part of the machinery of government of the State, it is within its province to adjust the relative rights of the corporation and the citizens. The Legisla-ture has thus the power to enact a statute re-quiring that, before suit for damages shall be instituted against a municipal corporation, a written notice of the claim shall be presented to the municipal authorities within a specified

period after injury or damage is sustained." *Id.* at 76.

At page 78 he further described this act as "creat[ing] a condition precedent to the right to maintain an action for damages". Cotham seizes upon the next words in *Neuenschwander* which described this act as "[having] the effect of a statute of limitations."

Basically the same argument was presented in *State v. Parks,* 148 Md. 477, 129 A. 793 (1925), relative to suits arising under the Maryland wrongful death statute, now Code (1970 Repl. Vol.), Art. 67, § 4, which at that time provided "that every such action shall be commenced within twelve calendar months after the death of the deceased person." (Now two years.) The contention was made that this was merely a limitation on the time within which the action should be brought and therefore could only be availed of by a plea of limitations and not attacked by way of demurrer. In an opinion by Judge Walsh the Court held the provisions of the statute to be "a condition precedent to the right to maintain the action" and said that the characterization of the statute in an earlier opinion as a "statute of limitations" was not binding upon the Court in *Parks.*

As a matter of fact, even if this statute were regarded as a statute of limitations, in *Pendergast v. Young,* 188 Md. 411, 53 A. 2d 11 (1947), in an opinion by Chief Judge Marbury, the Court quoted the Supreme Court of the United States as follows:

" 'The exemptions from the operation of statutes of limitation, usually accorded to infants and married women, do not rest upon any general doctrine of the law that they cannot be subjected to their action, but in every instance upon express language in those statutes giving them time after majority, or after cessation of coverture, to assert their rights.' *Vance v. Vance,* 108 U. S. 514, 2 S. Ct. 854, 859, 27 L. Ed. 808." *Id.* at 418.

In *Pendergast* there was a tax sale in 1937. The then owner of the property was 10 years of age. In 1946 he contended that since he had been under disability he was not subject to the limitations of one year within which to redeem.

In *Redfern v. Holtite Mfg. Co.*, 209 Md. 106, 120 A. 2d 370 (1956), the Court had under consideration what was then Code (1951), Art. 101, § 38 concerning the time within which death claims were required to be filed under the Workmen's Compensation Act. The claim on behalf of a child unborn at the time of the employee's death was filed more than one year after death. There was an attempt to rely upon the provisions of Code (1951), Art. 57, § 2 relative to limitations as applied to persons under disability of infancy or insanity. That claim was rejected.

In setting up the Unsatisfied Claim and Judgment Fund, the General Assembly provided for the filing of notice of intention to make a claim within 180 days after the accident. It is expressly made "a condition precedent to the right thereafter to apply for the payment from the fund". See Code (1970 Repl. Vol.), Art. 66½, § 7-606. There, however, the General Assembly saw fit to provide an exception if the individual were "physically incapable of giving the notice within the period" if "he gave the notice within 30 days after he became physically capable to do so". Even that statute does not contain a provision for extending the time of notice for one under disability such as an infant. *Mullins v. Thorne*, 254 Md. 434, 255 A. 2d 409 (1969).

We are not unmindful of the fact that in some cases decisions in other states appear to have permitted late filing of notice to a municipality where there was incapacity. See annotation "Municipal Corporations—Injury —Notice", 34 A.L.R.2d 725 (1954). It cannot be said, however, that any definite pattern emerges from these decisions.

In construing the Maryland act it must be borne in mind that it is of comparatively recent origin. It found

its way into the Code of Public General Laws with the enactment of Chapter 809 of the Acts of 1943, following on the heels of an enactment for Montgomery County by Chapter 405 of the Acts of 1941. At that time it was applicable only to Montgomery, Prince George's and Caroline Counties. Even today it does not apply in all counties of the state. Since its enactment in 1943 it has been amended by the General Assembly at seven sessions. At the 1965 session three separate acts were passed amending the statute and at the 1970 session two separate acts were passed. It must be borne in mind that prior to the 1965 session of the General Assembly such amendment could be made only in an odd numbered year. To hold that notice given on May 19, 1969, "upon discovery of the negligence" in this case complies with this statute would be to judicially place in the statute language which is not there. Examination of the body of Maryland law leads us to the conclusion that had the General Assembly intended notice under the circumstances here recited to comply with the statute, it would have so stated. The matter is one, however, that merits the close scrutiny of the General Assembly since it is obvious that injustice may be done under the present statute and the variations existing across the state (no notice required in some counties, 180 days' notice in certain other counties, 90 days' notice required in some counties, 90 days' notice required in municipal corporations in the counties mentioned and 180 days' notice required in Baltimore City) might be charitably characterized as "mildly confusing".

## II

In considering the second aspect of this case it is pointed out that the statute is applicable to actions or claims "for unliquidated damages" and the notice is required to be given within the specified period "after the injury or damage was sustained".

In this instance the third party claim does not recite the giving of any notice to the County, although we are advised that notice was given just prior to the argument

of the demurrer. Apparently, there have been a relatively small number of cases reaching the courts of other states upon the point here involved. See annotation "Claim Against Municipality—Notice", 93 A.L.R.2d 1385 (1964). As that work puts it:

"In the case of claims for indemnification, the cases have reached different results, due, in part at least, to differences in the wording of the applicable statutory provisions." *Id.* at 1388.

Prior to the passage of what is now Maryland Rule 315 relative to third party practice, third party practice was available at law only to joint tort-feasors. See Explanatory Notes of the Reporter, Code (1947 Supp.), pp. 2100-2103. The rule "was designed primarily to avoid a separate trial involving a repetition of testimony and to ensure more consistent judgments on related claims." *Gorn v. Kolker,* 213 Md. 551, 554-55, 133 A. 2d 65 (1957). In *Associated Transport v. Bonoumo,* 191 Md. 442, 447, 62 A. 2d 281 (1948), in a matter involving a joint tort-feasor, Judge (later Chief Judge) Markell, said for the Court:

"We think, therefore, that a 'judgment by default' in a third party action for contribution cannot become enrolled, or beyond the discretionary powers of the court to strike it out, before judgment in the original action."

As Judge Northrop put it in *Southern Maryland Oil Company v. Texas Company,* 203 F. Supp. 449 (D. Md. 1962):

"[A]ll [Maryland courts] who have had occasion to consider the matter have agreed that the rights both to indemnification and to contribution, whether based on contract or tort, accrue at the time of payment and not before." *Id.* at 452-53.

The claim of Dr. Maldonado is, therefore, an inchoate claim which does not ripen into being unless and until

he pays Cotham. To hold that a person in his position is barred under this notice statute from recovery against the municipal corporation would be to place in the hands of the plaintiff a determination of whether the defendant might be permitted to recover from the municipal corporation, because by the manipulation of the time of filing suit and the speed with which the plaintiff then proceeded, the plaintiff could easily place the potential third party plaintiff outside the statutory period. He has no knowledge of a claim until suit is filed and has no claim until it ripens into being by payment. Then it would not be a claim for unliquidated damages since the definition of that term in *Black's Law Dictionary* (4th ed. 1951) is:

"Such as are not yet reduced to a certainty in respect of amount, nothing more being established than the plaintiff's right to recover; or such as cannot be fixed by a mere mathematical calculation from ascertained data in the case."

If and when Dr. Maldonado becomes entitled to indemnification his claim will no longer be one for unliquidated damages. Accordingly, it follows that the demurrer to Dr. Maldonado's third party claim should have been overruled.

*Judgment in No. 15 affirmed, appellant to pay the costs; judgment in No. 266 reversed and case remanded for further proceedings, appellee to pay the costs.*