624 A.2d 539

Raymond Howell LEPPO

v.

STATE HIGHWAY ADMINISTRATION.

No. 122, Sept. Term, 1992.

Court of Appeals of Maryland.

May 14, 1993.

**418**

John J. Schneider (Hardwick & Harris, Jack L. Hardwick, on brief), Baltimore, for appellant.

Omar V. Melehy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Pamela J. Brown, Asst. Atty. Gen., all on brief), Baltimore, for appellee.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired, Specially Assigned).

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Once again we are called upon to divine what the Legislature intended when it enacted a statute. The statute with which we are concerned appears in the Maryland Code (1984, 1992 Cum.Supp.) § 12–106 of the State Government Article (SG) as part of the Maryland Tort Claims Act (MTCA). With certain exclusions and exceptions not here relevant, the Act waives the common law immunity the State enjoyed against tort action.[1] Subsection (a) of § 12–106 declares:

---

1. The Maryland Tort Claims Act was originally enacted in 1981 with a delayed effective date of 1 July 1982, and codified in Maryland Code (1980 Repl.Vol., 1983 Cum.Supp.) as §§ 5–401 through 5–408 of the Courts and Judicial Proceedings Article. *See State v. Harris,* 327 Md. 32, 34, 607 A.2d 552 (1992). It now appears in the Maryland Code (1984, 1992 Cum.Supp.) as Title 12, Subtitle 1 of the State Government Article.

This section does not apply to a claim that is asserted by cross-claim or counter-claim.

Subsection (b) provides:

A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) the action is filed within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later.

We are asked to determine whether § 12–106 applies to third-party claims. We hold that such claims are not encompassed within the exceptions under subsection (a). Therefore, in order to institute an action under § 12–106, a third-party claimant must comply with the provisions of subsection (b).

I

We chronologize this case to place it in clear perspective.

May 25, 1988: There was a collision on Black Rock Road (Maryland Route 88) in Baltimore County between a station wagon driven by Jeanne Ann Blout and a truck owned by Gray & Sons, Inc., driven by Raymond Howell Leppo, II, an employee of Gray.[2] Mrs. Blout was severely injured.

March 14, 1991: Mrs. Blout and her husband, Stanley Edward Blout, filed a tort action, arising in negligence, in the Circuit Court for Baltimore County, seeking damages from Leppo and Gray.

---

**2.** It is not clear from the documents in the record before us when the accident occurred. Some of them give the date as 25 May 1988 and others allege that it occurred on 25 March 1988. In any event, both dates were within the statutory period of limitations for the filing of suit.

February 11, 1992: Leppo filed, in the Blouts' action, a third-party complaint against the State of Maryland, Department of Transportation, State Highway Administration.

February 26, 1992: The State filed a motion for summary judgment or alternatively, to dismiss with prejudice or strike Leppo's third-party complaint. Leppo answered.

March 17, 1992: Leppo informed the State Treasurer by letter that he had filed an action as a third-party plaintiff against the State in the Blouts' suit against him. He enclosed a copy of his third-party action.

May 26, 1992: The Circuit Court for Baltimore County conducted a hearing on the State's motion to dismiss the third-party complaint.

July 7, 1992: The Circuit Court for Baltimore County signed an order dismissing the third-party claim. A final judgment was entered against Leppo for costs.

July 29, 1992: Leppo noted an appeal to the Court of Special Appeals.

December 22, 1992: The Court of Appeals, on its own motion, certified the case to it before decision by the intermediate appellate court.

The State's motion directed to the third-party complaint was primarily on the ground that Leppo had not complied with SG § 12–106(b). The State submitted an affidavit by the Director of the Insurance Division for the State Treasurer's Office which handled all claims filed under the MTCA. The Director swore that "[t]his office has never received written notice of any tort claims that arise from or relate to the accident that is the basis of this case."[3] Leppo responded to the State's motion by way of an answer explicated by a supplemental answer. His position was that his claim was

---

**3.** We note that the Blouts did not join the State as a defendant in their action and that Gray did not implead the State as a third-party defendant.

not barred by the 180–day written notice provision of the Maryland Tort Claims Act, Title 12, Section 12–106.

"There is nothing in the provisions of the act to bar this claim, ..." he declared, and added

in fact, the act specifically provides that notice is not required in cross-claims or counterclaims and the same reasoning would apply to third-party claims.

He cited to *Cotham and Maldonado v. Board,* 260 Md. 556, 273 A.2d 115 (1971) in support of his position.

In the circuit court, Leppo's counsel declared that "the real question before the court is [the] 180–day notice provision."

The claim of Leppo in this case is a claim for contribution or indemnification. The Maryland Tort Claims Act doesn't require a person that has right or claim against the State to subsequently file suit for indemnification.

He referred to *Cotham* as holding that

the 180–day period has no application in suits for contribution or indemnification.

The circuit court determined that the case was not governed by *Cotham* and therefore reliance had to be placed on the intent of the Legislature. The opinion of the judge then became lubricous:

[T]he court somewhat hesitatingly finds that the legislative intent was to exclude third-party claims from the exceptions....

"[H]owever," the judge observed, "this makes no logical sense whatsoever." He quoted *Cotham,* 260 Md. at 567, 273 A.2d 115:

"To hold that a person in his [third-party plaintiff] position is barred under this notice statute from recovery against the municipal corporation [here, State] would be to place in the hands of the plaintiff a determination of whether the defendant might be permitted to recover from the municipal corporation [here, State], because by the manipulation of the time of filing suit and the speed with which the plaintiff then proceeded, the plaintiff

could easily place the potential third-party plaintiff outside the statutory period. He has no knowledge of a claim until suit is filed and has no claim until it ripens into being by payment."

The judge opined, citing to *Simpson v. Moore,* 323 Md. 215, 592 A.2d 1090 (1991):

The court cannot make an enlargement of a statute so that what was omitted, presumably by inadvertence, may be included. To supply omissions transcends the judicial function and the only course open under the circumstances is to note the problem and trust that the Legislature and/or the Court of Appeals will address it.

*See* 323 Md. at 226–228, 592 A.2d 1090. "For those reasons," the final decision of the court was that

the Legislature did not intend to exclude third-party claims from the notice requirement of Section 12–106(b)....

Since Leppo "failed to meet that requirement," the court granted the State's motion to dismiss Leppo's third-party complaint.

## II

When a court is engaged in the divination of legislative "intent," the key is the purpose of the legislation, determined in the light of the statute's language and context. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 516, 525 A.2d 628 (1987). When we look at the statutory language we apply the plain meaning of the words chosen by the Legislature. *Scheve v. Shudder,* 328 Md. 363, 371–372, 614 A.2d 582 (1992); *Revis v. Automobile Ins. Fund,* 322 Md. 683, 686, 589 A.2d 483 (1991). If the statutory language itself is insufficient to lead us comfortably to conclude what the Legislature intended, we look beyond the words and examine legislative history when it is available and the context of the legislation. *Warfield v. State,* 315 Md. 474, 499–500, 554 A.2d 1238 (1989).

A

██ The plain language of SG § 12–106(b) undermines Leppo's position. The 180–day requirement is a condition precedent to the institution of a third-party action against the State. *Lopez v. State Highway Admin.*, 327 Md. 486, 490, 610 A.2d 778 (1992); *Simpson v. Moore*, 323 Md. at 225, 592 A.2d 1090. As noted above, the only exceptions designated are cross-claims and counterclaims. The General Assembly could have added third-party claims to this short list, but it chose not to do so. This Court may not " 'judicially place in the statute language which is not there' in order to avoid a harsh result." *Simpson v. Moore*, 323 Md. at 225, 592 A.2d 1090, quoting *Cotham* 260 Md. at 565, 273 A.2d 115. "Where a statute expressly provides for certain exclusions, others should not be inserted." *Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 156, 416 A.2d 734 (1980). We said in *Ferrero Constr. v. Dennis Rourke Corp.*, 311 Md. 560, 575, 536 A.2d 1137 (1988): "When the legislature has expressly enumerated certain exceptions to a principle, courts normally should be reluctant thereafter to create additional exceptions." Such reasoning is in keeping with another maxim of statutory construction: *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another). *See Gay Investment v. Comi*, 230 Md. 433, 438, 187 A.2d 463 (1963); *Johns v. Hodges*, 62 Md. 525, 538 (1884).

B

██ The legislative history of the MTCA furnishes strong support for the omission of third-party claims from the exception subsection of the Act. The bill file of the Senate Judicial Proceedings Committee on Senate Bill 585 contains a draft of the bill which eventually evolved into SG § 12–106. The draft included the following:

(A)(1) Except as provided in paragraph (2) of this subsection, an action may not be instituted pursuant to this subtitle unless the claimant has first presented the claim

in writing to the State Treasurer or his designee and the claim has been denied in writing....

(2) The provisions of paragraph (1) of this subsection do not apply to claims asserted under the Maryland Rules of Procedure by *third-party declaration,* cross-claim, or counterclaim.

(Emphasis added). The version that made its way through the democratic process, *see* Acts 1981, ch. 298, referred only to "cross-claim or counterclaim" and made no mention of a "third-party claim." In the evolution of the Act to its present form despite legislative action by way of amendments, revisions and its transfer from the Courts and Judicial Proceedings Article to the State Government article, "third-party claim" never again was included with "cross-claim" and "counterclaim" as exceptions to the provisions for instituting an action under the Act. This is strong evidence that the Legislature intended that third-party claimants be subject to the notice requirement. See *Kaczorowski,* 309 Md. at 514–515, 525 A.2d 628 to the effect that amendments occurring as a bill progresses through the General Assembly fairly bear on the fundamental issue of legislative purpose or goal.

## C

Congress enacted the Federal Tort Claims Act (FTCA) in 1946 as a partial abrogation of the national government's sovereign immunity. The FTCA has served as a model for nationwide modification of the sovereign immunity doctrine.

[I]n response to the pleas on the various policy grounds, the doctrine [of sovereign immunity] has undergone considerable erosion.... The most popular form of legislative modification is a Tort Claims Act patterned after the federal Tort Claims Act passed in 1946.

Testimony of Carl E. Eastwick, Chief Legislative Officer, regarding S.B. 585 which was the primal act of what is now SG § 12–106. Although the MTCA is not modeled after the FTCA, and the present form of § 12–106 does not mirror the FTCA, the Legislature was aware of the FTCA as

indicated by Eastwick's testimony. A comparison of the two statutes is enlightening in interpreting SG § 12–106(a). At the time the MTCA became law, the FTCA provided:

An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C., § 2675(a). The federal statute continued:

The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by *third party complaint*, cross-claim, or counterclaim.

*Id.* (emphasis added). As we have noted, the counterpart of the present SG § 12–106 was originally codified in the Courts and Judicial Proceedings Article of the Maryland Code as § 5–406(a). Section 2675(a) of the FTCA and § 5–406(a) were similar but had one significant difference. The Maryland statute, like the federal statute, excepted a cross-claim and a counterclaim from the requirement of notice by the Maryland statute, but, unlike the federal statute, did not include a third-party claim in its notice exceptions. The present SG § 12–106(a), as we have seen, preserved the omission of a third-party claim from the exceptions for notice.

## D

Leppo's reliance on *Cotham* is misplaced. *Cotham* was decided under the provisions of Md.Code (1957, 1970 Cum. Supp.) Art. 57, § 18, since repealed by Acts 1978, ch. 770.

*See* CJ § 5–404, formerly CJ § 5–306. The statute at issue in that case governed actions against certain municipalities and counties. Durley Cotham, the original plaintiff in the case, had filed a medical malpractice action against Dr. Benjamin Maldonado, Jr, a physician, and Prince George's County; she had been a patient at Prince George's General Hospital when the alleged negligence occurred.

When *Cotham* was decided, Art. 57, § 18 read, in pertinent part:

> No action shall be maintained and no claim shall be allowed against any municipal corporation or against any of the counties enumerated in this subsection for unliquidated damages for any injury or damage to person or property unless within the times specified in this section after the injury or damage was sustained, written notice thereof setting forth the time, place or cause of the alleged damage, loss, injury or death shall be presented ... to the county commissioners....

At the time of the plaintiff's hospitalization, someone bringing an action against Prince George's County had 90 days to give such a notice. Because Cotham hadn't complied with that requirement, the County was dismissed from the case. Seeking to bring Prince George's County back into the litigation, Maldonado filed a third-party claim against the County for indemnification. The County responded to Maldonado as it did against Cotham: there had been no notice within the time limits set forth in the statute.

The trial court agreed with the County that Maldonado had not filed the required notice. This Court, however, reversed, holding that Art. 57, § 18 did not force Maldonado to act before he was required to pay Cotham. 260 Md. at 566–567, 273 A.2d 115. Until then, his claim was not ripe. *Id.* Art. 57, § 18 provided no exceptions whatsoever in the nature of claims for indemnification or contribution. Although *Cotham may have impact on the question* of *when* a third-party plaintiff must file a claim against the State, it provides no support for the notion that § 12–106(a) excepts

third-party claims from the requirement that a claim first be filed with the Treasurer.[4]

## E

 Leppo does not retreat from his view that a third-party claimant falls within the exceptions of § 12–106(a) despite that the plain language of the statute, fortified by the clear legislative intent, requires compliance with § 12–106(b) as a condition precedent to the filing of his action. He argues that third-party claims are so inherently different from other kinds of actions that the Legislature simply could not have meant that third-party actions constituted "claims" under SG § 12–106(b). Leppo hangs his hat on SG § 12–107(a)(2), which indicates that the "form" of a third-party claim shall "demand specific damages." We see no merit in this velleity. Of course, cross-claim, counterclaim and third-party claim are not synonymous, but they each share the common characteristic of being a "claim." The concept of a claim is broad. We found in *Edmonds v. Lupton,* 253 Md. 93, 100, 252 A.2d 71 (1969) that in its ordinary or usual sense, claim is a broad and comprehensive term, and in its legal sense embraces all species of legal demand. *See White v. Land Homes Corp.,* 251 Md. 603, 610–611, 248 A.2d 159 (1968). Md.Rule 2–332 entitled, "Third–Party Practice," contemplated a "claim" in that light. *White* at 610–611, 248 A.2d 159. A claim in the context of civil litigation is a substantive concept, defining the moment at which a litigant may seek judicial recourse. *Edmonds,* 253 Md. at 100, 252 A.2d 71. It is linked to the existence of legally operative facts. Md.Rule 2–302 states, "There shall be a complaint ..." and recognizes: "There may be a counterclaim, a cross-claim, and a third-party

---

**4.** In *Simpson v. Moore,* 323 Md. 215, 224, 592 A.2d 1090 (1991) we cited to *Cotham and Maldonado v. Board,* 260 Md. 556, 273 A.2d 115 (1971) as holding that the "discovery rule, applicable to statute of limitations triggered by accrual of cause of action, is not applicable to notice provision requiring notice within a specified time 'after the injury or damage was sustained.'"

complaint." *Id.* Md.Rule 2–332(a) provides: "A defendant, as a third-party plaintiff," may cause a summons and complaint

> to be served upon a person not previously a party to the action who is or may be liable to the defendant for all or part of a plaintiff's claim against the defendant.

"A person so served," the Rule declares, "becomes a third-party defendant." The MTCA recognizes this scheme. But it does not attempt to redefine the moment at which the substantive law creates a claim. Rather, the MTCA adds an additional procedural prerequisite that a third-party claimant must satisfy before pursuing a claim within the judicial system. The party must present written claim upon the State Treasurer or his designee. SG § 12–107 defines the procedure that such a claim must follow, but not the facts or principles that gave rise to the claim in the first place. The procedure allows the State an opportunity to investigate and either settle the claim, or deny the claim and thereby choose to later defend against the substantive merits of the suit in a traditional judicial forum.

## F

In Leppo's answer and supplemental answer to the State's motion to dismiss, he claimed that the State had not been prejudiced by the time of filing of the third-party complaint. At the hearing he argued that the State had not been prejudiced by the timing of his action and asked the court to so hold and therefore, permit his third-party claim to stand. The answer to this argument is found in *Simpson v. Moore*, 323 Md. 215, 592 A.2d 1090.

The relevant provisions of CJ § 5–306, later CJ § 5–404, provided:

> (a) *Notice required; time for giving notice.*—Except as provided in subsection (c) of this section, no action for unliquidated damages for an injury to a person or his property may be brought against a county or municipal

corporation unless the notice of the claim required by this section is given within 180 days after the injury.

\* \* \* \* \* \*

(c) *Entertainment of suit in absence of notice.*—Notwithstanding the other provisions of this section, the court may, upon motion and for *good cause shown,* entertain the suit even though the required notice was not given, unless the defendant can affirmatively show that its defense has been prejudiced thereby.

(Emphasis added). The petitioners in *Simpson* argued that the Court should read a "good cause" exception into the MTCA and cited as authority CJ § 5–306. The legislative history of the 1985 MTCA amendments contained several references to CJ § 5–306, and Judge McAuliffe, speaking for the Court in *Simpson,* was called upon to compare and distinguish the two statutes. Judge McAuliffe rejected the petitioner's contention and declined the invitation to read a "good cause" exception into the statute. Judge McAuliffe reasoned:

> The legislature was aware of the existence and contents of the 180–day notice provision when it borrowed from that provision in imposing a 180–day requirement in the MTCA. Indeed, the legislative history shows specific references to § 5–306 of the Courts Article, where the notice provision was then codified. The legislature could have, if it wished, tracked the exception provision of that statute in amending the MTCA. For whatever reason, it did not do so, and we are not free to judicially place in the statute an entire section of language which is not there.

323 Md. at 225, 592 A.2d 1090. Judge McAuliffe then explained that the MTCA legislative history reference to CJ § 5–306 showed *"only* an intent to track the time period used by the referenced statute." *Id.* (emphasis added). Accordingly, *Simpson* declined to read into the statute an

exception that was not there.[5]

## G

■ The bottom line is, that in the light of the plain language of SG § 12–106, the legislative history of the section, the comparison of the section with the provisions of the FTCA, and the absence of an "escape clause" by way of lack of prejudice, a third-party complainant must file the 180–day claim required by SG § 12–106(b)(1) in order to bring an action under the MTCA. We are not persuaded by the sophistical argument that SG § 12–107(a)(2) necessarily implies otherwise. It follows that the hearing judge was correct in determining that Leppo as a third-party claimant was subject to § 12–106(b), and therefore required to file a timely claim with the Treasurer as a condition precedent to his third-party action.

## III

From the start, the parties have focused on the question whether a third-party claimant is within the exceptions of

---

5. We observe that *Simpson* disposed of the notion that § 12–102, which provides that the MTCA "shall be construed broadly, to insure that injured parties have a remedy," could "serve as a springboard for judicial legislation." The Court said:

> Provisions such as this, and the canon of construction favoring a liberal interpretation of remedial legislation, are helpful in resolving ambiguities in statutes, but do not permit us to expand the statute to afford relief where the words of the statute bar that relief.

323 Md. at 227, 592 A.2d 1090.

We note that Senate Bill 406 (1993) amended SG § 12–106 by adding subsection (c) to take effect 1 October 1993. The amendment did not touch subsection (a), leaving intact the cross-claim and counterclaim exceptions. But it added subsection (c) as follows:

> Unless the defendant can affirmatively show that its defense has been prejudiced by lack of notice, upon motion and for good cause shown the court may entertain an action under this subtitle even though the written claim required under subsection (b) of this section was not submitted to the Treasurer or the Treasurer's designee.

The bill passed the Senate and the House and is awaiting the signature of the Governor. The amendment was obviously the reaction of the General Assembly to our holding in *Simpson*.

§ 12–106(a). They both have clearly indicated that the time the 180–day clock began to run was not "before the court." The matter was not argued at the circuit court hearing and the circuit court did not address it. The legislative intent with respect to § 12–106(b)(1) was not pursued in the briefs submitted to us. At the instance of the Court, the question arose in oral argument before us, but the responses were not enlightening; in the main they consisted of no more than possible alternatives.

When the hearing judge determined that third-party claimants were required to give the notice pursuant to § 12–106(b), he dismissed the complaint because Leppo "failed to meet that requirement." The judge did not explain in what respect Leppo failed to meet the notice requirement. Leppo's letter to the Treasurer, enclosing a copy of the third-party action previously filed in the underlying suit, placed Leppo in this posture:

(1) he had complied with the requirements of § 12–106(b); or

(2) he had not complied with the requirements of § 12–106(b); or

(3) the time for complying with the requirements of § 12–106(b) had not yet arisen.

Our procedures permit third-party actions but just how they fit into the MTCA is far from evident. Absent clear legislative direction, third-party actions and § 12–106(b) must be reconciled to reflect the best interests of justice— fairness both to third-party plaintiff and to the State. Although the matter of compliance *vel non* with § 12–106(b) is a matter of law, we are reluctant to resolve it prior to the parties having the opportunity to fully brief and argue the issue. We think that it should first be argued and decided below, thereby giving the third-party complainant and the State the opportunity to be heard. In the event of an appeal they could fully express and support their respective views by way of brief and argument. Therefore, we remand the case to the Circuit Court for Baltimore County with direction to vacate its order dismissing the third-party

**432**

action and, in the light of our holding that third-party actions are required to comply with the provisions of § 12–106(b), to conduct further proceedings to determine whether, in the circumstances here, there was compliance with those provisions.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED;**

**CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS PURSUANT TO THIS OPINION;**

**COSTS TO BE PAID BY THE STATE OF MARYLAND.**