808 A.2d 1262

Cleveland FAULK

v.

Louis M. EWING.

No. 39, Sept. Term, 2001.

Court of Appeals of Maryland.

Oct. 10, 2002.

Alan Hilliard Legum (Kathleen Duckett McCann of Alan Hilliard, P.A., on brief), Annapolis, for petitioner.

Richard R. Page Wyrough (Sloane R. Franklin of Cain & Wyrough, P.C., on brief), Upper Marlboro, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

HARRELL, Judge.

Cleveland Faulk, Petitioner, and Louis Michael Ewing, Respondent, were involved in a motor vehicle accident on 19 March 1998 in Easton, Maryland. At the time of the accident, Respondent was an employee of Easton Utilities Commission ("EUC"), a public utility commission owned and operated by the Town of Easton, and was driving an EUC vehicle. The

Director of Safety for EUC, called to the scene through Ewing's efforts, investigated the accident on the same day it occurred. An employee of the law firm that initially represented Petitioner provided written notification of the accident to Easton's insurer, The Hartford Insurance Company ("Hartford"), on or about 31 March 1998. Hartford denied the claim in a reply letter of 8 April 1998.

Petitioner filed suit on 16 June 2000 in the District Court of Maryland, sitting in Talbot County, seeking monetary damages from Respondent.[1] At the conclusion of the presentation of the parties' cases-in-chief and Petitioner's closing argument, Respondent moved to dismiss the case, arguing for the first time that Petitioner failed to provide the requisite notice of his claim to the Town of Easton under § 5-304 of the Local Government Tort Claims Act ("LGTCA"). Maryland Code (1974, 1998 Repl.Vol., 2001 Supp.), Courts and Judicial Proceedings Article, § 5-304. The judge permitted Petitioner to re-open his case-in-chief in order to introduce copies of the exchange of correspondence between Petitioner's former counsel and Hartford. The District Court ultimately denied Respondent's motion to dismiss and entered judgment for Petitioner for $5,000. With regard to LGTCA § 5-304, the judge impliedly concluded that the notice sent to Hartford did not satisfy § 5-304, but elected "to entertain the suit" nonetheless because "there's no showing that the defense has been prejudiced here by lack of the required notice."

Respondent appealed to the Circuit Court for Talbot County based on the District Court record.[2] The Circuit Court, on 7

---

1. Pursuant to Maryland Code (1974, 1998 Repl.Vol., 2001 Supp.), Courts and Judicial Proceedings Article, § 5-303(b), the Town of Easton is liable for "any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government."

2. Petitioner sought $ 10,000 in damages, *see infra* page 293. Maryland Rule 7-102(b) provides, in relevant part, that

 [a]n appeal shall be heard on the record made in the District Court in the following cases:

March 2001, reversed the judgment of the District Court on the ground that Petitioner had not provided proper statutory notice to the Town of Easton and was not entitled to relief from that failure. Petitioner then sought review by this Court. On 7 June 2001, we issued a writ of certiorari, *Faulk v. Ewing*, 364 Md. 461, 773 A.2d 513 (2001), to consider the following rephrased questions:

1. Whether the notice requirements of § 5–304 of the LGTCA are satisfied, substantially complied with, or waived, pursuant to § 5–204(c), when:

a. A local government employee makes a motion to dismiss for failure to comply with § 5–304 at the close of evidence in a trial, after answering the Complaint, conducting discovery, and completing the evidentiary portion of the trial.

b. The Director of Safety for a local government's utility company is notified of the accident and investigates the scene.

c. A local government's insurer is given timely written notice of the claim.

d. A local government shows no prejudice from not having received the notice required by § 5–304(a) and (b).

2. Whether the oral argument by Petitioner's counsel at the close of evidence in the District Court constituted a motion sufficient to show good cause for waiver of the notice requirement pursuant to § 5–304(c).

3. Whether the Circuit Court erred in overruling the lower court's decision denying Respondent's motion to dismiss,

---

(1) a civil action in which the amount in controversy exceeds $2,500 exclusive interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract. . . .

Maryland Code (1974, 1998 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–401(f), states:

*De novo and on record appeals.*—In a civil case in which the amount in controversy exceeds $2,500 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract, in any matter arising under § 4–401(7)(ii) of this article, and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. . . .

specifically, whether the lower court's decision constituted an abuse of discretion.

### I.

On 19 March 1998, Petitioner, Cleveland Faulk, and a passenger, Tracy Tilghman, were traveling on Glebe Road in Talbot County in Petitioner's vehicle when Respondent, Louis Michael Ewing, allegedly pulled out of a driveway, encroached into Petitioner's lane, forced Petitioner to drive into a ditch, and caused Petitioner's car to go "in the air and c[o]me down." At the time of the accident, Respondent was an employee of EUC and was operating an EUC vehicle within the scope of his employment.[3] Immediately after the accident, Respondent radioed the "dispatcher of utilities," who "took care of calling the proper authorities," including the police and paramedics. The dispatcher also notified Daniel G. Tarrant, the Director of Safety for EUC, who went to the scene the same day and investigated the accident "on behalf of Easton Utilities." The following day, Petitioner sought medical treatment for soreness in his lower back. He continued receiving chiropractic care until 16 June 1998.

On 31 March 1998, Petitioner's counsel[4] sent a letter to Hartford, the Town of Easton's insurer,[5] contending that Respondent's actions on 19 March caused Petitioner and Ms. Tilghman to suffer injuries. The letter read:

---

3. Respondent testified that at the time of the accident he was "reading meters on Glebe Road."

4. Plaintiff's counsel at this time was not the same attorney or firm that represented him when the case was filed and tried in the District Court, heard by the Circuit Court, or considered by this Court.

5. For purposes of this case, we assume, as did the parties and the courts below, that Hartford, at the time of the accident, insured the Town of Easton and EUC for the type of potential liability represented by Petitioner's claim.

March 31, 1998

The Hartford Insurance Co.
ATTN: Mr. Dan Schukraft
P.O. Box 170
Chewsville, MD 21721[6]

| | | | |
|---|---|---|---|
| RE: | Claimant | : | Cleveland Faulk and Tracy Tilghman |
| | Insured | : | Town of Easton |
| | Driver | : | Louis Michael Ewing, Jr. |
| | D/Acc. | : | 3/19/98 |
| | L/Acc. | : | Glebe Rd., Talbot Co., MD |

Dear Mr. Schukraft:

Please be advised that this office represents the above named in the matter of personal injuries and/or property damage sustained as the result of being involved in an accident with your insured on the above captioned date.

Kindly acknowledge coverage in this matter.

Very truly yours,
Diane T. Cech (ext. 710)
Assistant to [Petitioner's counsel]

DTC/cb
Enclosure (police report)

Hartford, by letter dated 8 April 1998, responded as follows:

6. Chewsville, Maryland, is located in Washington County, just east of Hagerstown. By vehicular travel, Chewsville is approximately 135 miles from Easton. Regarding the nature of the relationship (other than insurer/insured) or frequency of contact between Hartford's Chewsville office and the Town of Easton or EUC, generally or with regard to the 19 March 1998 accident, the record is not explicit.

[Petitioner's lawyers]
[Address]

RE: Our Insured: Town of Easton
Claim No. 732 KAL 61422
D/L: March 19, 1998
Claimants: Cleveland Faulk & Tracy Tilghman

Dear Diane Cech:

Please be advised that we have reviewed the circumstances surrounding the accident which occurred on March 19, 1998 and believe that we have sufficient information at this time to make a proper decision regarding this liability claim.

From our investigation, we do not feel our insured would be legally liable for this incident. According to the statement of the driver of the insured vehicle, he never entered the eastbound lane of travel. There was never any contact between the vehicles. We have no information to suggest that our insured contributed to this accident.

Therefore, we must respectfully deny any voluntary payment of this claim.

Should you have any questions at all concerning this, please don't hesitate to contact me at 301-739-4582.

Thanks very much for your kind cooperation.

Very truly yours,
Daniel A. Schukraft, CPCU, SCLA
Senior Claims Representative

Following this denial, Petitioner filed suit against Respondent in the District Court seeking $10,000 damages for "injuries to his person, medical expenses, and pain and suffering."

Prior to the trial in the District Court, Respondent filed a general "Notice of Intention to Defend" and participated in discovery with Petitioner.[7] Discovery consisted of interrogatories propounded by both parties.

---

7. Respondent was represented by counsel for the Town of Easton, presumably as designated by Hartford, because the accident occurred

At trial on 15 September 2000, both Petitioner and Respondent called witnesses [8] and submitted exhibits in their cases-in-chief. After Petitioner's closing argument, Respondent moved to dismiss the case, arguing for the first time that Petitioner failed to adduce proof that proper notice was given to the Town of Easton as required by § 5–304(a) and (b) of the LGTCA and that Petitioner showed "absolutely nothing to the Court which would support a position that [he] failed to give the notice for good cause" under § 5–304(c).[9] Petitioner, in

within the scope of Respondent's employment by EUC. *See supra* note 1 and accompanying text.

8. Petitioner called Cleveland Faulk and Tracy Tilghman as witnesses, both of whom Respondent cross-examined. Respondent called Louis M. Ewing and Daniel Tarrant for direct examination. Petitioner cross-examined Mr. Ewing, but did not cross-examine Mr. Tarrant.

9. Section 5–304 of the Local Government Tort Claims Act, entitled "Actions for unliquidated damages," provides:

(a) *Notice required.*—Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

(b) *Manner of giving notice.*—(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

(i) In Baltimore City, to the City Solicitor;

(ii) In Howard County, to the County Executive; and

(iii) In Montgomery County, to the County Executive.

(2) In Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county solicitor or county attorney.

(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

(c) *Waiver of notice requirement.*-Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon

response, maintained that the court should not dismiss his case because Respondent made no objection prior to that point in the litigation based on failure to give proper notice and because the Town of Easton had actual notice of the claim based on EUC's Director of Safety's investigation of the scene of the accident on the day the accident occurred. Shifting gears, Petitioner asked for permission to reopen his case for "the simple purpose of just putting in the notice that was, in fact, given." When that permission was granted, Petitioner provided as evidence of notice to the Town of Easton copies of the March 1998 letter sent to Hartford and the April 1998 letter from Hartford denying the claim.

The District Court judge denied Respondent's motion to dismiss, holding that there was no "showing that the defense ha[d] been prejudiced .... by lack of the required notice" under § 5–304(c). Although a bit garbled in the transcript, it appears that the judge concluded preliminarily that Petitioner's 31 March 1998 letter to Hartford failed to satisfy the requirements of § 5–304(a) and (b).[10] Therefore, he granted relief from the failure to meet the requirements, as allowed by § 5–304(c). Based on its application of the Boulevard Rule,[11] the court entered judgment for the Petitioner.

Respondent appealed to the Circuit Court for Talbot County. He argued that the District Court erred in denying his motion merely because it was persuaded that he (or the Town of Easton) suffered no prejudice as contemplated by § 5–304(c).[12] Based on a plain reading of § 5–304, Respondent

motion and for good cause shown the court may entertain the suit even though the required notice was not given.

10. Whether the judge considered this question in terms of substantial compliance as well as strict compliance is unclear on this record.

11. The Boulevard Rule (Maryland Code (1977, 1999 Repl.Vol.), Transportation Article, § 21–404(b)) provides:

*Same–Yielding right-of-way.*—The driver of a vehicle about to enter or cross a highway from a private road or driveway or from any other place that is not a highway shall yield the right-of-way to any other vehicle approaching on the highway.

12. Respondent also argued that the District Court judge erred in his application of the Boulevard Rule. The Circuit Court, however, dis-

contended that Petitioner failed to give adequate notice to the Town, which notice, Respondent maintained, is "a prerequisite to filing a claim against a local government," and that Petitioner "failed to show good cause why no notice was given and [failed to] move the court for a waiver." Petitioner responded that the District Court judge did not abuse his discretion in refusing to dismiss Petitioner's case because Petitioner "substantially complied with the notice requirement of § 5–304 by sending written notification to, and receiving written acknowledgment from, the [T]own of Easton's representatives...." Additionally, Petitioner contended that by "putting on a substantive defense without raising the preliminary issue of notice, [Respondent] ... demonstrated that he was not prejudiced by [Petitioner's] alleged lack of notice," and that "by remaining silen[t] for so long, [Respondent] waived his right to the protections of [§ 5–304(a)] which arguably may have prevented this suit from being 'brought' against him." (Emphasis omitted).

After hearing oral argument, the Circuit Court, on 7 March 2001, reversed the judgment of the District Court. Finding merit in Respondent's arguments, it found that notice is "a necessary prerequisite" under § 5–304 and that Petitioner did not give adequate notice in this case. Additionally, the court held that Petitioner's presentation in the District Court did not qualify for a waiver of the notice requirement under § 5–304(c) because Petitioner did not make the required motion and did not show adequate good cause for failing to provide proper notice.

Petitioner then sought review by this Court. We issued a writ of certiorari to consider the interpretation of § 5–304 of the LGTCA at issue in this case.

Additional facts may be supplied as necessary in our analysis of the case.

---

missed Petitioner's case on the ground that he did not provide adequate notice to the Town of Easton under § 5–304(a). By so doing, the Circuit Court was not required to consider the District Court's application of the Boulevard Rule. That issue is not before this Court.

## II.

Whether a particular claimant strictly complied or substantially complied with the notice requirements of § 5–304(a) and (b), or showed good cause pursuant to § 5–304(c) for relief from any failure to give proper notice, also were questions considered in the recent opinion of this Court in the consolidated cases of *Moore v. Norouzi,* and *Mendelson v. Brown,* 371 Md. 154, 807 A.2d 632 (2002) (Nos. 126 & 127, Sept. Term 2000)(2002). Certiorari was granted in the Moore and *Mendelson* cases on 8 February 2001 (362 Md. 624, 766 A.2d 147(2001)), and on 7 June 2001 in the present case (364 Md. 461, 773 A.2d 513 (2001)). The decision in Moore and *Mendelson* establishes the analytical paradigm for and largely presages the outcome of the present case.[13]

Petitioner here argues that the notice requirements of § 5–304(a) and (b) are satisfied for three reasons. First, he asserts that actual notice was given to the Town of Easton because he mailed timely written notice to Hartford, the municipality's insurer, and because the Director of Safety for EUC investigated the accident the day it occurred. Thus, Petitioner urges this Court to find that if the spirit of the law is satisfied, the letter of the law need not be met. In support, he directs our attention to a sentence in *Jackson v. Bd. of County Comm'rs,* 233 Md. 164, 168, 195 A.2d 693, 695 (1963): "If the purpose of the statute is fulfilled, the manner of the accomplishment of the fulfillment has not generally been tested too technically." Petitioner underscores that the pur-

---

**13.** Even the dissent in *Moore* recognized, with prescience, that the present decision was inexorable:

"The majority, in my view, is rewriting the statute to suit its purposes. The Legislature has predetermined the entities to whom notice must be given. It could easily have, but did not, include private (or public) claim administration entities. *Nor did it designate adjusters for insurance companies that may offer liability insurance to local governmental entities, although, with the Court's decision today, this Court will be hard pressed to make distinctions.*"

*Moore v. Norouzi,* and *Mendelson v. Brown,* 371 Md. 154, 807 A.2d 632 (2002) (Cathell, J., dissenting) (Nos. 126 & 127, Sept. Term 2000) (2002) (emphasis supplied).

pose of the notice requirement is to give the municipality notice sufficient to allow it ample time to conduct its own investigation. *Williams v. Maynard,* 359 Md. 379, 389–90, 754 A.2d 379, 385 (2000) (hereinafter *"Maynard"*). Therefore, as his argument goes, the 31 March 1998 letter from Petitioner's former counsel to Hartford fulfilled the purpose of the statute and substantial compliance occurred. For proof that the Town of Easton had adequate time to investigate the accident, he urges that one need only look to Hartford's 8 April 1998 letter reciting that it claimed to "have sufficient information" upon which to decide to reject Petitioner's claim.

Alternatively, Petitioner argues that, in the absence of substantial compliance, he demonstrated good cause for his failure to provide proper notice. He claims that his counsel's oral argument at the close of the District Court trial, in response to Respondent's motion to dismiss, was tantamount to a motion, pursuant to LGTCA § 5–304(c), to forgive non-compliance with the notice requirements. Petitioner further argues that Respondent failed to show any actual prejudice resulting from Petitioner's failure to provide proper notice. Finally, Petitioner argues that because Respondent waited to raise noncompliance with the LGTCA notice requirements until the trial virtually was completed, Respondent effectively waived the notice requirements.

Respondent controverts that he was required to move to dismiss on the basis of failure to notify pursuant to § 5–304 prior to the time he made the motion in the District Court. Respondent further argues that neither the investigation of the accident by the Director of Safety for EUC, nor the 31 March 1998 letter to Hartford, constituted actual notice to the Town of Easton as required by § 5–304(a) and (b). Respondent rejects the contention that either Mr. Tarrant or Mr. Schukraft were acting as agents for the Town of Easton for purposes of the required statutory notice. Respondent further argues that Petitioner's counsel's comments at the conclusion of the trial did not constitute a motion for relief pursuant to § 5–304(c), and that he was not required to make a showing of prejudice due to the lack of notice, absent such a motion by

Petitioner. Respondent claims that a formal motion to waive the notice requirements, a showing of good cause, and a finding of good cause by the court are all prerequisites to trigger Respondent's obligation to make a showing of overarching prejudice. Allegedly, Petitioner met none of those prerequisites.

Respondent next argues that the examples of good cause Petitioner pointed to on appeal fail as a matter of law. The alleged good cause presented by Petitioner assertedly does not fall into any of the categories of good cause generally accepted in other jurisdictions in similar contexts, as enumerated in *Heron.* *See infra* note 20. Additionally, Respondent contends that, although the trial court had discretion to determine whether Petitioner demonstrated good cause for noncompliance with the notice requirement, the trial judge abused that discretion because of the dearth of evidence in the record to support a finding of good cause.

### III.

This Court recognized, as recently as the *Moore* and *Mendelson* cases, that the purpose of the LGTCA is to "provide a remedy for those injured by local government officers and employees acting without malice and in the scope of employment." *Moore,* 371 Md. at 165, 807 A.2d 632 (citing *Ashton v. Brown,* 339 Md. 70, 107, 660 A.2d 447, 465 (1995)). The LGTCA provides a remedy to those injured by local government officers and employees, while "ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts." *Ashton,* 339 Md. at 108, 660 A.2d at 466. Sections 5–304(a) and (b) of the LGTCA provide that potential plaintiffs must give potential local government defendants notice of impending claims within 180 days of the injury, and that such notice be given to designated government officials or other, less precisely defined representatives. *See supra* note 9. The notice requirements are intended to apprise a local government "of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh

and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.' " *Maynard,* 359 Md. at 389–90, 754 A.2d at 385 (quoting *Jackson,* 233 Md. at 167, 195 A.2d at 695). Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute. *Moore,* 371 Md. at 171–72, 807 A.2d 632; *Maynard,* 359 Md. at 389–90, 754 A.2d at 385; *Jackson,* 233 Md. at 167, 195 A.2d at 695. Substantial compliance "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Moore,* 371 Md. at 171, 807 A.2d 632. *See also Williams v. Montgomery County,* 123 Md.App. 119, 131, 716 A.2d 1100, 1104–05 (1998), *aff'd sub nom. Williams v. Maynard,* 359 Md. 379, 754 A.2d 379 (2000) (noting that notice must be given even if it is deficient in some respects). In *Condon v. Univ. of Maryland,* 332 Md. 481, 496, 632 A.2d 753, 760 (1993), we said that substantial compliance is "such communication that provides . . . 'requisite and timely notice of facts and circumstances giving rise to the claim.' " *Id.* (quoting *Conaway v. State,* 90 Md.App. 234, 246, 600 A.2d 1133 (1992)).

In *Moore v. Norouzi* and *Mendelson v. Brown* we considered initially whether notice by claimants/petitioners to a third-party claims administrator acting on behalf of a self-insured local government constituted strict or substantial compliance with the notice requirements of LGTCA § 5–304. The petitioners in those cases were injured in motor vehicle accidents allegedly caused by employees of Montgomery County. Neither petitioner/claimant sent notice to the County Executive of Montgomery County in the manner directed by the statute. *See* LGTCA, § 5–304(b)(1)(iii).[14] Rather, in both

---

14. Although LGTCA § 5–304(b) also allows notice to be delivered to the "corporate authorities" of Montgomery County (as also argued in

cases, substantive communications were had between the claimants and a third-party claims administrator for Montgomery County, Trigon Administrators, Inc. ("Trigon"). Trigon acted as such pursuant to a contract with Montgomery County, Maryland, acting through its Department of Finance, Division of Risk Management. Trigon, in performing its contractual obligations with the County, employed a "fully automated system that is integrated with the County's existing accounting and other information systems." *Moore,* 371 Md. at 159, 807 A.2d 632. Trigon kept "current" both the data it uses and the Division of Risk Management's information system. It did so by either using on-line access to the county information system, or by providing Risk Management with on-line access to Trigon's information system. *Id.* Either method ensured that each party to the contract had "real-time" access to the system. *Moore,* 371 Md. at 175, 807 A.2d 632. Furthermore, Trigon was required to:

"[c]ooperate with and assist the Office of the County Attorney, or other designated counsel, in the defense of claims and in subrogation recovery. Such assistance will include, but not be limited to, making a full investigation, including contacting the claimant, taking statements from the claimant, identifying and taking statements from all witnesses, obtaining all bills, taking relevant photographs . . . and attending and/or assisting at trials and/or hearings. Once a lawsuit is filed and the claim is transferred to the Office of the County Attorney, or other designated counsel, the above assistance will continue."

*Moore,* 371 Md. at 161–62, 807 A.2d 632. Trigon was also empowered to settle claims for $2500.00 or less, without consultation or advance approval by the County. *Id.*

The first petitioner, Robert Moore, was injured when he was a passenger on a Montgomery County Ride On bus that collided with another motor vehicle. *Moore,* 371 Md. at 162, 807 A.2d 632. Trigon contacted Moore within days of the

---

*Moore* ), we did not consider or decide there what persons or entities may constitute such "authorities."

accident and discussed the accident with him. Shortly there-
after, Moore's attorney wrote Trigon to confirm what Moore
already had reported. Trigon acknowledged that letter and
indicated that it was "the third party administrator for Mont-
gomery County, and is currently investigating the facts sur-
rounding" the accident. *Moore*, 371 Md. at 162–63, 807 A.2d
632. Throughout two years of unsuccessful negotiations be-
tween Moore and Trigon, Trigon continued to present itself in
such terms. *Id.* Moore ultimately filed suit in the Circuit
Court for Montgomery County. The suit was dismissed, on
the County's motion, on the basis that the statutory notice
must comply strictly with the requirements of § 5–304(b)(iii),
and Moore's notice to Trigon alone was not adequate. *Moore*,
371 Md. at 170, 807 A.2d 632.

The second petitioner, Stuart Mendelson, presented similar
facts. While operating an automobile, he was injured when
his vehicle was struck in the rear by a County police vehicle
driven by a Montgomery County Police Officer who was acting
within the scope of his official duties. *Moore*, 371 Md. at 164,
807 A.2d 632. Mrs. Mendelson, the petitioner's wife, reported
the accident to the Division of Risk Management the following
day by completing a verbal Telephone Claims Report which
included information as to the time and place of the accident,
parties involved, and a description of how the accident oc-
curred. *Moore*, 371 Md. at 164–65, 807 A.2d 632. The report
was forwarded to Trigon which advised her to obtain two
estimates of the damage to petitioner's vehicle. In subsequent
letters to petitioner and his counsel, Trigon identified itself as
the "claims administrator for the Montgomery County Police
Department." *Id.* Mendelson ultimately filed suit against the
County in the Circuit Court for Montgomery County. His
claim was dismissed, on the County's motion, for non-compli-
ance with the notice requirements of § 5–304.

This Court concluded in *Moore* and *Mendelson* that, due to
the nature of Trigon's and the County's intertwined and
extensive claims administration systems and the high degree
of control the County exercised over Trigon's activities, sub-
stantial compliance with the statutory notice requirement

owed to Montgomery County resulted by virtue of the dealings between the claimants, their representatives, and Trigon. *Moore*, 371 Md. at 169, 807 A.2d 632. In doing so, we explicitly overruled *Loewinger v. Prince George's County*, 266 Md. 316, 292 A.2d 67 (1972), and instead adopted the Amicus American Trial Lawyers Association's argument in *Moore* that "[s]ubstantial compliance turns on ensuring that the County [or local government] has sufficient actual notice to perform a proper and timely investigation." *Moore*, 371 Md. at 178, 807 A.2d 632. We stated:

> Consequently, where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304(b)(3) to be supplied, who thus acquires actual knowledge within the statutory period, the tort claimant has substantially complied with the notice provisions of the LGTCA.

*Moore*, 371 Md. at 178, 807 A.2d 632.

Alternatively, this Court also found that, even had it concluded that substantial compliance was lacking, there was evidence to find good cause to relieve the claimants' from the notice requirements, pursuant to LGTCA § 5–304(c). We noted that each petitioner acted as would an "ordinarily prudent person under similar circumstances," by relying on the representations of Trigon that it represented the County. *Moore*, 371 Md. at 179, 807 A.2d 632.

In order to fully appreciate this Court's holding in *Moore*, it is useful to review *Loewinger*, the earlier case overruled by *Moore*. *Loewinger* involved a woman who caught her feet in a treadmill while undergoing medical tests at a hospital operated by Prince George's County, Maryland. This Court addressed the narrow question of whether petitioner complied with the notice requirements of Maryland Code (1957, 1972 Repl.Vol.), Article 57, § 18, the predecessor statute to § 5–304. *Loewinger*, 266 Md. at 317, 292 A.2d at 68. The alleged

notice in that case consisted of written reports and records made by employees of the county hospital, interviews of petitioner by the county's insurer, the insurer's subsequent investigation, written notice of the claim sent to the insurance company, and the acknowledgment of the insurer that it was in fact the insurer for the hospital. *Id.* This Court acknowledged that " '[i]f the purpose of the statute is fulfilled, the manner of the accomplishment of the fulfillment has not generally been tested too technically.' " *Id.* (quoting *Jackson*, 233 Md. at 168, 195 A.2d at 695). We continued by noting,

> "[t]his is not to say that any information at all, conveyed to anyone connected with the County, is sufficient. There must be substantial compliance in order to give the statute effect. Lacking here was any direct notice whatever to the County Commissioners or Council. That the hospital authorities knew about an accident and the liability carrier investigated the injury and received a communication from plaintiff's attorney informing it of his representation, is insufficient compliance with the statute."

*Loewinger*, 266 Md. at 318, 292 A.2d at 68. Were the facts of *Loewinger* to arise anew today, there is no doubt, in light of *Moore*, that those facts would have been found to comply substantially with LGTCA § 5–304(a) and (b). *See Moore*, 371 Md. at 180, 807 A.2d 632 (noting that "[w]hen that purpose [the claimant furnishes the municipal body with sufficient information to permit it to make a timely investigation] has been achieved, we have already held, substantial compliance with the statute is the result.").

### IV.

### A.

At the threshold of our analysis of the present case, we must dispose of a procedural argument mounted by Petitioner. Petitioner contends that any challenge to whether he gave the Town of Easton proper notice pursuant to LGTCA § 5–304(a) and (b) is a matter that should have been raised by Respondent prior to when he moved to dismiss on that ground after

the close of evidence in the District Court trial. Petitioner notes that "[h]ad this action been in Circuit Court, Rule 2–322(b)(4) and (c) would have required the defendant to raise the issue . . . prior to trial so that the trial court could have decided the issue preliminarily. . . ." In considering this argument, we shall address first, whether the statutory notice requirement is a required element of Petitioner's claim that he was obligated to prove as part of his prima facie case in the District Court; and second, whether the defense of defective notice must be raised prior to trial in the District Court.

■ Generally, notice requirements of this type have been viewed as conditions precedent to maintaining subsequent legal actions. *Neuenschwander v. Washington Suburban Sanitary Comm.*, 187 Md. 67, 77, 48 A.2d 593, 599 (1946) (stating that "the notice is a condition precedent to the right to maintain the suit"), *overruled on other grounds by statute as stated in Arnold v. Prince George's County*, 270 Md. 285, 311 A.2d 223 (1973). *See also Leppo v. State Highway Admin.*, 330 Md. 416, 423, 624 A.2d 539, 542 (1993) (interpreting a statutory notice requirement in the Maryland Tort Claims Act to be a condition precedent to institution of a third-party action against the State); *Redfern v. Holtite Mfg. Co.*, 209 Md. 106, 120 A.2d 370 (1956) (finding that statutory notice was a condition precedent to applying for payment for deaths pursuant to the Workmen's Compensation Act). This Court expressly has held that the notice requirements of § 5–304(a) and (b) are a condition precedent to maintaining an action pursuant to the LGTCA. *Grubbs v. Prince George's County*, 267 Md. 318, 320–21, 297 A.2d 754 (1972) (stating "we have regarded it [the predecessor statute to the LGTCA, Maryland Code (1957, 1972 Repl.Vol.) Art. 57, § 18] as a condition precedent to the right to maintain an action for damages").

■ A common vehicle to raise lack of notice under LGTCA § 5–304(a) and (b) as a defense is a motion for judgment. A motion for judgment calls upon the court to evaluate the strength of the evidence presented by the non-

moving party. We described the analysis triggered by a motion for judgment in *Driggs Corp. v. Maryland Aviation Administration,* as

> "whether, as a matter of law, the evidence produced during A's case, viewed in a light most favorable to A, is legally sufficient to permit a trier of fact to find that the elements required to be proved by A in order to recover have been established by whatever standard of proof applicable."

348 Md. 389, 402, 704 A.2d 433, 440 (1998). A motion to dismiss, on the other hand, typically calls for the evaluation of the sufficiency of the pleadings in terms of the claim stated or potential procedural deficiencies.[15] Although perhaps Respondent more correctly should have framed his challenge to the notice provided to the Town of Easton by moving for judgment at the close of Petitioner's evidence, pursuant to Md. Rule 3–519(a),[16] we shall not elevate form over substance in the context of the record of this case. Although verbally styled as a motion to dismiss, the thrust and timing of Respondent's motion sought relief akin to a motion for judgment. The ground of his motion required the judge to analyze the sufficiency of Petitioner's evidence regarding a required element of proof of his cause of action. We find no merit in Petitioner's procedural quibble about the timing of Respondent's motion on this record, particularly where Petitioner was permitted to re-open his case in chief to adduce any evidence of notice or, for that matter, evidence of good cause to be excused from the notice requirements.

---

**15.** The only "pretrial" motion to dismiss mentioned in the District Court rules is the motion to dismiss for improper venue. Md. Rule 3–326(a) provides that "a defense of improper venue may be raised on motion before or at commencement of trial."

**16.** Maryland Rule 3–519(a) states,

"Generally. A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make the motion by introducing evidence during the presentation of an opposing party's case."

■ Petitioner's argument that Respondent should have made his dispositive motion before he actually did also reflects a fundamental misunderstanding of District Court civil practice. The District Court rules do not reflect the extensive motions practice that is provided for in the rules applicable to Circuit Court practice. Rather, there are a limited number of mandatory pre-trial motions contemplated by Md. Rule 3–326(a), such as improper venue. The District Court is intended to be a streamlined forum which contemplates limited pleadings, papers, discovery, and with trials held within a relatively short period following filing of a complaint. To introduce in the District Court the more complex civil procedure of the Circuit Court, as Petitioner's argument wishes, would interfere unnecessarily with the expeditious and efficient resolution of cases that come before that court.

### B.

In the present case, we deal with a municipal form of local government (i.e. the Town of Easton) within the scope of the LGTCA.[17] Strict compliance with the requirements of § 5–304(a) and (b) required that Petitioner, within 180 days of 19 March 1998, give written notice of his claim, stating the time, place, and cause of his injuries, via personal delivery or postmarked certified U.S. mail, return receipt requested, to the "corporate authorities" of the Town. It is clear that, even without deciding whether Hartford was a "corporate authority" of the Town of Easton for purposes of the LGTCA, Petitioner did not produce evidence of strict compliance with § 5–304(a) and (b) in other respects. The copy of the 19 March 1998 letter in evidence does not include an envelope or other indicia of a postmark by the United States Postal Service, nor does the copy of the letter purport that the original had been sent via certified mail, return receipt requested. Moreover, there was no testimony to such effect. It

---

**17.** LGTCA § 5–301(d)(5) defines, among others, a "local government," as "[a] municipal corporation established or operating under Article 25 of the [Md.] Code...."

is debatable whether the content of the letter fully informs the addressee as to the "time" (although a date is supplied), "place" (some unspecified point along "Glebe Rd., Talbot Co., MD"), or "cause of the injury" (advising only of an "accident," without regard to whether it involved a motor vehicle or vehicles, an open hole, or any other operative modality).

Although Petitioner's efforts fail strict compliance scrutiny, we turn now to an analysis of whether, on the facts of the present case, substantial compliance with the purpose of the notice requirements of § 5–304(a) and (b) exists. Unlike *Moore's* analysis of the substantial compliance question, the record here fails to develop in any meaningful or functional way the relationship between Hartford, or its Chewsville office, and the insured municipality. Here, the general insurer/insured relationship is the only reasonable inference permitted on the record, unlike the relationship between Montgomery County, a self-insured local governmental unit, through its Risk Management Division, and its contract claims administrator, Trigon. It was obviously important to us in Moore, in accepting the claimants' substantial compliance arguments, that the intertwined information technology systems of the two existed, that Trigon had authority to settle unilaterally claims up to $2500 per claim, and that Trigon conducted extensive fact-finding and other negotiations with the claimants, on behalf of the County. Despite the differences between the records, the reasoning in Moore nonetheless leads us to conclude that the facts in the instant case demonstrate substantial compliance with the notice requirements of § 5–304(a) and (b).

Substantial compliance, as characterized in *Moore,* requires "some effort to provide the requisite notice … albeit not in strict compliance with the statutory provision." *Moore,* 371 Md. at 171, 807 A.2d 632. Petitioner in the present case made "some effort" to provide notice. As mentioned *supra,* Petitioner's counsel sent Hartford the 31 March 1998 letter containing apparently sufficient information about the accident to enable a timely investigation to occur and notifying Hartford

that Petitioner expected some type of compensation from its insured, the Town of Easton, for his personal injuries and property damage.

The touchstone of substantial compliance is whether the alleged "notice" was sufficient to fulfill the purpose of the requirement. As we recognized in *Moore,* the purpose of the notice requirement is "to ensure that the local government is made aware of its possible liability at a time when it is able to conduct its own investigation and ascertain, for itself, from evidence and recollection that are fresh and undiminished by time, the character and extent of the injury and its responsibility for it." *Moore,* 371 Md. at 176, 807 A.2d 632. For a local government, such as the Town of Easton, insured by a private insurance carrier, such as Hartford, the underlying purpose of § 5–304 is satisfied by the notice to the insurer on the facts of this case. As indicated in the 8 April 1998 letter response from Hartford to Petitioner's counsel, the insurer indicated that it had "reviewed the circumstances surrounding the accident," and had "sufficient information at this time to make a proper decision regarding this liability claim" against its insured. Hartford further stated "[f]rom our investigation, we do not feel our insured would be legally liable for this incident." Hartford maintained that, on behalf of its insured, it had been able to conduct an investigation (or had available to it the fruits of Mr. Tarrant's 19 March 1998 investigation of the accident) and "ascertain ... the character and extent of the injury and its [insured's] responsibility for it." The 8 April 1998 letter, written less than one month after the accident and two weeks after Petitioner's letter, made manifest that Hartford had notice of the accident. Given that Petitioner acted to put Hartford on notice, and that Hartford stated that an investigation sufficient to justify it making a decision to deny the claim had been performed, Petitioner complied substantially with § 5–304(a) and (b).

## C.

Because we hold that Faulk demonstrated substantial compliance with LGTCA § 5–304(a) and (b), we shall not reach his

alternative argument that he was entitled to relief under LGTCA § 5–304(c).

### *JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE DISTRICT COURT; COSTS TO BE PAID BY RESPONDENT.*

Dissenting opinion by CATHELL, J.

CATHELL, Judge, dissenting.

I respectfully dissent.

That which I foresaw in *Moore* and *Mendelson* has occurred in the case *sub judice.* With the decision in the case at bar all a plaintiff's attorney has to do is send out form letters to potential insurers of local governments, and if one is sent to a local government's insurer, then that plaintiff, according to the majority, has complied with the provisions of the Local Government Tort Claims Act. A plaintiff can notify an insurance company, negotiate with an insurance company, have the claim settled and paid by the insurance company, without the local government ever having any direct knowledge that a claim has been made, and only getting indirect knowledge when its premiums are raised as a result of its claim's history. A history of which it may have little knowledge.

The majority again gives short shrift to the settled law (before this Court unsettled it), that the notice provisions of the Local Government Tort Claims Act are conditions precedent to the maintenance of most tort actions against local governments. When the Legislature abrogated certain aspects of governmental immunity for local governments, it did so in respect to torts, only if, as a condition precedent, a specific notice of the existence of the pending claim was given to specified entities. Insurance companies were nowhere indicated as proper recipients of the required notice.

The movement by this Court to judicially repeal a Legislative action, *i.e.,* the notice requirement of the Local Govern-

ment Tort Claims Act, without declaring the statute itself to be unconstitutional is, in my view, inappropriate. It began not with this case, but with several cases over the last decade. In my dissent in *Heron v. Strader*, 361 Md. 258, 273, 761 A.2d 56, 64 (2000), I fully expressed my concern that the Court has strayed from applying the policy of the Legislature to applying a policy of its own choosing. With the present case, the majority of the Court goes further in repealing this Legislative policy than even I thought possible. After having studied the way in which the Court has dealt with the issue in the past fifteen or so years, I had, until *Moore* and *Mendelson*, thought that this Court could not possibly go so far as to hold that notice to an insurance company could satisfy the statutory provisions. However, in those two recent cases, I noted that if the majority could do what it did there, it could do what it has done here. I had hoped by pointing out where the Court's policy was going, to deter it. Instead, as the majority notes in the present case, my warning was but a prediction—to my chagrin, an accurate one.

I suggest that when a claimant's attorney, who obviously has never read the notice provisions of the statute, can contact an insurer directly without making any notice on any governmental official,[1] the statute is dead.

The majority, in my view, is substituting what it considers to be a better public policy for the public policy announced by the Legislature when it created the notice provisions as conditions precedents to the maintenance of suits. The Legislature very carefully crafted the provisions that must be met in order that the immunity of a local government would be waived. The majority, as I see it, effectively repeals that portion of the

---

1. The majority opines that the driver of the governmental entity's vehicle had reported the accident to his supervisor, and the supervisor had reported it to a safety officer. That really has nothing to do with the statute. The notice provisions of the statute are concerned with the notification of "claims" to officials in local government possessing certain levels of authority. If an employee's reporting of an accident is enough, in and of itself, to constitute notice to municipal authorities that claims are going to be made, the Act's provisions requiring notice from claimants are relatively meaningless.

statute. When notice to an insurance company is construed to satisfy the notice provisions, little remains.

I discussed extensively my thoughts on the creation of the Local Government Tort Claims Acts, and the intent of the Legislature in enacting the statutes, in *Heron, supra.* I refer the reader to that dissent for a consideration of that discussion. It makes no sense to repeat that discussion again. I am sure it will receive the same consideration it has previously received.

I think it is important to note, however, another matter that should be of some concern. We are firm in guarding against Legislative encroachment into judicial branch authority. We guard our independence, jealously and vigorously. We should be no less vigorous in guarding the independence of the other branches of government. We do have the awesome power to treat others differently, but we should not do so. We should defer to the Legislature's power as the primary creator of public policy, just as we require that branch to defer to the proper authority of this Court.

Simply stated, with *Heron, Moore* and *Mendelson,* and now *Faulk,* in addition to their predecessor cases, the Court has been, and is, in my opinion, legislating. It is substituting its concepts of the proper public policy for that of the Legislative branch. I believe that it is wrong to do so. As a result, if local governments want the protections they have always thought were provided by the notice provisions at issue, they had better go to the Legislature. There is no longer help, or even a sympathetic ear for them in this branch of government. For, alas, as to this issue, my struggle to reason with my otherwise almost always reasonable colleagues is at an end. I may be stubborn, but I know when I no longer have any chance of having my point of view on this issue accepted by three other members of the Court. If I were to continue the fight, I would be unreasonable. (I am as capable of being unreasonable as anyone, I suppose.) As I stated in a somewhat recent case, the name of which escapes me, quoting from

**312**

the late Chief Joseph of the Nez Perce tribe, "I will fight no more forever" this battle.