Demonte RENN, et al.

v.

**BOARD OF COMMISSIONERS OF CHARLES COUNTY, MD, et al.**

No. CIV.A. DKC20042080.

United States District Court, D. Maryland.

Jan. 24, 2005.

358–60, 114 S.Ct. 1599, 128 L.Ed.2d 319    (1994).

**600**

John Amato, IV, Goodman, Meagher and Enoch LLP, Baltimore, MD, for Plaintiffs.

Kevin Bock Karpinski, Allen, Karpinski, Bryant and Karp PA, Baltimore, MD, for Defendants.

### MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution is a motion by Defendants Board of Commissioners of Charles County, Maryland, Jerry Michael, Mike Quinlan, Calvin Ross, Edward Kordell, and Karl Ott to

dismiss counts I and II of Plaintiffs' complaint for failure to comply with § 5–304 of Maryland's Local Government Tort Claims Act ("LGTCA"). *See* Md.Code Ann., Cts. & Jud. Proc. § 5–304 (2002). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will deny Defendants' motion.

### I. Background

#### A. Factual Background

The following facts have been alleged in the complaint. In June 2001, DeMonte Renn was employed by Superior Carriers, Inc. as a tanker truck operator. On or about June 13, 2001, Renn was directed by his employer to deliver a load of ferric chloride to the Charles County Mattawoman Waste Water Treatment Plant ("MWWTP"), a water treatment facility owned, operated, and maintained by the Charles County Department of Utilities in La Plata, Maryland. Upon arriving at the facility, Renn was met by MWWTP employee Mike Seward. After advising Seward that he had never made a delivery to the facility and was unfamiliar with its layout, Seward directed Renn to follow him to the location where he could complete delivery. Once there, Seward showed Renn a group of three valves and directed Renn to hook the tanker truck up to the center valve. Noticing that the valve was marked "HYPO," Renn asked Seward if he was sure that the middle valve was the proper valve, to which Seward answered affirmatively. Seward then removed the center valve's cap, entered an adjacent building to open an interior shut-off valve, and returned to the tanker truck. At this point, Renn asked Seward if there was sufficient room in the tank for the delivery, to which Seward again responded affirmatively. Seward in-

structed Renn to close the interior shut-off valve and return to the front office when the unloading was complete.

After donning protective equipment, Renn connected the hose on his tanker to the center valve and began to unload the ferric chloride. After ensuring that no leaks were present, Renn removed his protective equipment. Shortly thereafter, Renn began to smell an odor of chlorine gas. He again checked the connection at the valve in order to see if any leaks were present, and, after not noticing any, retreated from the valve to obtain fresh air. At that point, Renn observed a "large cloud, emanating from the adjacent building, ... approximately half the size of a football field." *See* Paper 2, ¶ 21. As an alarm horn inside the MWWTP began to sound, Renn began to feel dizzy and nauseous, but was able to shut off the valve at his truck, as well as the interior shut-off valve inside the adjacent building. Approximately fifty emergency vehicles responded to the scene and Renn was transported by ambulance to the Civista Medical Center Emergency Room. Plaintiffs assert that the valve to which Seward had instructed Renn to connect his truck led to a tank of sodium hypochloride, which created a cloud of chlorine gas when it came in contact with the ferric chloride Renn was delivering. Renn alleges that as a result of the accident, he sustained both physical and emotional injuries, including airway inflammation and reactive airway dysfunction syndrome.

On August 23, 2001, Great West Casualty Company ("Great West"), the insurance carrier for Renn's employer, sent a letter to the MWWTP informing it that Great West was handling Renn's workers' compensation claim and that it intended to seek reimbursement from MWWTP on the workers' compensation benefits it paid on behalf of its insured, Renn's employer. The letter further advised the MWWTP to notify its liability insurance carrier of Great West's demand for reimbursement, and to have it contact Great West to acknowledge the lien. On September 20, 2001, an assistant county attorney for Charles County called Great West and acknowledged receipt of the notice letter.

### B. Procedural Background

On or about June 10, 2004, Plaintiffs DeMonte Renn and his wife Deborah Renn, for themselves and for the use of Great West, filed suit in Circuit Court for Charles County against the Board of Commissioners of Charles County,[1] as well as Defendants Jerry Michael, Mike Seward, Mike Quinlan, Calvin Ross, Edward Kordell, Rusty Talcott, Tony Clark, and Karl Ott.[2] The complaint alleges negligence (count I) and loss of consortium (count II) against all Defendants, and federal civil rights claims under 42 U.S.C. § 1983 against Defendant Seward (count IV), as well as against the individual County Commissioners and Jerry Michael, the county's Director of Utilities (count V). In addi-

1. As well as naming the "Board of Commissioners of Charles County," Plaintiffs also named the five county commissioners, individually and in their official capacity.

2. Jerry Michael was named individually and in his capacity as Director of Utilities of Charles County. The remaining defendants were named individually and in their capacity as employees of the Department of Utilities, working at the MWWTP. As of the date of this Memorandum Opinion, three Defen-

dants initially named—Rusty Talcott, Mike Seward, and Tony Clark—had yet to be served. On December 22, 2004, the court ordered the claims against Talcott dismissed pursuant to Fed.R.Civ.P. 4(m). *See* Paper 21. In addition, the clerk was directed to reissue a summons for Seward and, if requested by Plaintiff, to reissue a summons for Clark. It expressly declined, however, to decide whether there was good cause for an extension of time to serve Seward and Clark. *Id.*

tion, Plaintiffs seek to recover on behalf of Great West the workers' compensation benefits it has paid to, and on behalf of, Mr. Renn (count III).

On July 6, 2004, the case was removed to this court on the basis of federal question jurisdiction. Subsequently, on July 15, Defendants moved to dismiss counts I and II for failure to provide notice as required under Maryland's Local Government Tort Claims Act ("LGTCA"). *See* Md.Code Ann., Cts. & Jud. Proc. § 5–304. For the following reasons, the motion will be denied.

## II. Standard of Review

■ Although denominated a motion to dismiss, Defendants do not identify which subsection of Fed.R.Civ.P. 12 they believe applies. However, a prefiling requirement is most appropriately analyzed under Rule 12(b)(6) and treated as a substantive element of state law, *see* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* ¶¶ 1:53.7 and 9:197.5 (2004), rather than as a lack of subject matter jurisdiction under Rule 12(b)(1). Indeed, Maryland courts have consistently held that the LGTCA's notice requirement is a condition precedent to the right to maintain an action for damages, *Grubbs v. Prince George's County*, 267 Md. 318, 297 A.2d 754, 755–56 (1972), and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action. *Madore v. Baltimore County*, 34 Md.App. 340, 367 A.2d 54, 56 (Md.1976). Thus, Defendants' motion will be treated as a 12(b)(6) motion.

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979).

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint. The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action." *Abadian v. Lee*, 117 F.Supp.2d 481, 485 (D.Md.2000) (citing *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749

(D.Md.1997), *aff'd,* 151 F.3d 180 (4th Cir. 1998)). Because Defendants do not rely on evidence outside the pleadings to support their motion, but rather attack the sufficiency of the August 23, 2001 notice letter referenced in the complaint as it applies to the Renns, the court need not convert their 12(b)(6) motion to one for summary judgment.

## III. Analysis

Defendants argue that Mr. and Mrs. Renn's ("the Renns") state law tort claims (counts I and II) are barred by their failure to provide notice of their claims in accordance with the LGTCA. Plaintiffs contend that these two claims should not be dismissed because Great West's timely letter dated August 23, 2001 constitutes substantial compliance with the notice requirements, or, in the alternative, that good cause exists for not complying with the statute.[3]

Section 5–304(a) of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Cts. & Jud. Proc. § 5–304(a). In Charles County, "the notice shall be given in person or by certified mail, ... by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of [Charles County.]" *Id.* § 5–304(b). As mentioned above, the notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action. *See Madore,* 367 A.2d at 56; *Grubbs,* 297 A.2d at 755–56.

The purpose of the notice requirement is "to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.'" *Bartens v. City of Baltimore,* 293 Md. 620, 446 A.2d 1136, 1138–39 (1982) (quoting *Jackson v. Bd. of County Comm'rs of Anne Arundel County,* 233 Md. 164, 195 A.2d 693, 695 (1963)). In light of this purpose, the Maryland Court of Appeals has held that "strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice." *Moore v. Norouzi,* 371 Md. 154, 807 A.2d 632, 643 (2002); *see also, e.g., Faulk v. Ewing,* 371 Md. 284, 808 A.2d 1262, 1272 (2002); *Williams v. Maynard,* 359 Md. 379, 754 A.2d 379 (2000); *Jackson,* 195 A.2d at 695. In *Faulk,* the Court of Appeals stated:

> Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute. Substantial compliance "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." In *Condon v. Univ. of Maryland,* 332 Md. 481, 496, 632 A.2d 753, 760 (1993), we said that substantial compliance is "such communication that provides ... 'requi-

---

**3.** For the reasons that follow, it will not be necessary to assess Plaintiffs' assertion of good cause.

site and timely notice of facts and circumstances giving rise to the claim.'" *Id.* (quoting *Conaway v. State,* 90 Md. App. 234, 246, 600 A.2d 1133 ([Ct. Spec.App.] 1992)).

*Faulk,* 808 A.2d at 1272–73 (internal citations omitted).

Here, Defendants argue the Renns have not satisfied § 5–304(b)'s requirement that "the claimant or the representative of the claimant" provide the notice. Specifically, they contend that the Renns have not substantially complied with the notice requirement because the August 23, 2001 notice letter referenced in the complaint was not sent by the Renns, but rather by Great West. Thus, they argue, "[t]he fact that Great West sent timely notice of *its intention* to pursue a claim does not constitute 'substantial compliance' with the LGTCA notice requirement on the part of Mr. And Mrs. Renn."[4] *See Paper* 14 at 6 (emphasis in original).

As mentioned above, when ruling on a 12(b)(6) motion, the court must consider all well-pled allegations in a complaint as true, *see Albright,* 510 U.S. at 268, 114 S.Ct. 807, and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison,* 176 F.3d at 783 (citing *Mylan Laboratories, Inc.,* 7 F.3d at 1134). Plaintiffs have alleged in their complaint that, "by letter dated August 23, 2001, plaintiff Great West Casualty Company placed defendant Board of Commissioners on notice that it had paid worker's compensation benefits to and on behalf of plaintiff." *See* Paper 2, ¶ 24. Moreover, the complaint alleges that "Defendant

Board of Commissioners, through Assistant County Attorney Roger Fink, Esquire, acknowledged receipt of notice by means of telephone call on September 20, 2001." *Id.*

The Great West letter undoubtedly satisfies § 5–304(b)(3)'s requirement that the notice "state the time, place, and cause of the injury." It begins by stating that "[o]n June 13, 2001, an employee of Superior Carriers, Inc., DeMonte Renn, delivered a load of ferric chloride to the [MWWTP] in La Plata, Maryland." *See* Paper 11, Ex. 2. It then provides a five paragraph long description of the circumstances surrounding the accident and indicates that, as a result, "Mr. Renn suffered injury." *Id.* Further, the letter states that Great West is the workers' compensation carrier for Renn's employer, that Renn had made a workers' compensation claim, and that Great West would present a demand for reimbursement at the conclusion of their investigation of Renn's claim. Thus, the letter provided the name of the injured party, his employer, the date, general nature, and place of the accident, as well as alerting the MWWTP that medical expenses as a result of the incident had been and would be sustained.

Defendants do not dispute, nor could they, that this letter was sent well within the 180–day period following the June 13, 2001 incident. Moreover, Plaintiffs have alleged in the complaint, and Defendants have not disputed, that an assistant county attorney acknowledged receipt of the letter on September 20, 2001. Furthermore, Defendants have not argued that the letter

---

4. In support of this proposition, Defendants cite *Nationwide Mutual Fire Ins. Co. v. Washington Suburban Sanitary Comm'n,* 170 F.Supp.2d 570 (D.Md.2001), in which the district court dismissed Nationwide's subrogation claim on the grounds that oral notice given by Nationwide's insured at the scene of the accident did not constitute substantial compliance on the part of Nationwide. *Id.* at 572. However, in that case, unlike here, "no timely written notice of any kind was provided," and Nationwide "made no allegation from which it could be inferred that the defendant's employees who were on the scene ... said anything to indicate that legally required notice had been given by Nationwide's insured." *Id.*

did not fulfill the statute's purpose of "providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation." *See Moore*, 807 A.2d at 640. Thus, it appears that the Great West letter fulfilled the purpose of the notice requirement, i.e., to "furnish the municipal body with sufficient information to permit it to make an investigation in due time." *Jackson*, 195 A.2d at 695. However, Defendants contend that because Great West sent the notice letter and not the Renns, they have not substantially complied with the notice requirements. Thus, the critical issue is whether the delivery of the notice letter by Great West constitutes compliance, either substantial or full, by the Renns.

Although no Maryland courts have addressed this precise issue, the Iowa Supreme Court, analyzing a similar notice provision under Iowa's Municipal Torts Claims Act, has held that a letter from a workers' compensation carrier to a city official was sufficient to sustain the injured employee's claim against the city. In *Orr v. City of Knoxville*, 346 N.W.2d 507 (Iowa 1984), the plaintiff (Orr) brought suit against the city for injuries sustained while working when he fell in a manhole and sewer drain located on a city street. Iowa's Municipal Torts Claim Act required a plaintiff to bring suit within six months of the accident, or to notify the city within sixty days and file suit within two years thereafter. Orr brought his action more than six months after the accident, and, thus, compliance with the statute turned on validity of the notice afforded the city.

The city argued, like Defendants here, that the notice provided was defective because it was sent by the workers' compensation carrier (Kemper) and not by Orr. The court disagreed, stating:

> The evidence reflects Kemper had a potential liability for Dwight Orr's medical expenses and permanent disability. Under certain conditions Kemper is made Dwight Orr's statutory agent to "recover damages [against a third party] for the injury to the same extent that the employee might." *See* Iowa Code § 85.22(2) (1983). Where, as here, the notice provided would support a subsequent action by Kemper for Dwight Orr's damages, we believe it was sufficient to support Orr's claim in his own right. Dwight Orr's claim against Kemper, linked with the provisions of section 85.22(2), minimally permits us to view the notice as one "cause[d] to be presented to ... the municipality" by Dwight Orr.

*Id.* at 509 (quoting Iowa Code § 613A.5 (1983) (current codification at § 670.5)).

■ Here, in count III of the complaint, Plaintiffs, on behalf of Great West, allege a claim against Defendants for the amounts paid to, and on behalf of, Mr. Renn as a result of the accident at the MWWTP. Defendants do not dispute that the notice Great West sent on August 13, 2001 clearly indicates its intention to pursue a subrogation claim arising out of Renn's accident, and they have not moved to dismiss that claim. Although count III is one for damages paid by Great West on behalf of its insured, it is alleged to be a statutory right arising out of the relationship between Great West, Renn, and Renn's employer. Like in *Orr*, it appears the notice provided is sufficient to support a subrogation action by Great West against Defendants, and, therefore, should be sufficient to support Mr. Renn's claims in his own right,[5]

---

5. Indeed, Defendants appear to concede that Great West complied with the notice requirement, arguing "[t]he fact that Great West sent timely notice of *its intention* to pursue a claim does not constitute 'substantial compliance' ... on the part of Mr. and Mrs. Renn." *See* Paper 14 at 6 (emphasis in original).

*see Orr,* 346 N.W.2d at 509, including the loss of consortium claim brought jointly by the Renns. *See Oaks v. Connors,* 339 Md. 24, 660 A.2d 423, 428 (1995) ("[A] consortium claim must be filed jointly by a couple and tried concurrently with the claim of the physically injured spouse in order to avoid duplication of awards.") (citing *Deems v. W. Maryland Ry. Co.,* 247 Md. 95, 231 A.2d 514, 525 (1967)).

Moreover, Great West's asserted rights against Defendants only arise because Renn's injuries resulted from the alleged tortious acts by the Defendants. Under the reasoning of *Orr,* and because the precise scope of the relationship between Renn and Great West under the applicable workers' compensation statutes may not have been fully explored, it is inappropriate to dismiss the Renn's state law claims against Defendants on the basis that they have not alleged compliance with the LGTCA. Construing the facts alleged in the complaint in favor of Plaintiffs, and in light of the statute's well established purpose, the Renns have alleged substantial compliance (if not full compliance through an agent) with the notice provisions of the LGTCA to survive. Defendants' 12(b)(6) motion. Accordingly, Defendants' motion to dismiss will be denied.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be denied. A separate Order will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 24th day of January, 2005, by the United States District Court for the District of Maryland, ORDERED that:

1.   The motion by Defendants Board of Commissioners of Charles County, Maryland, Jerry Michael, Mike Quinlan, Calvin Ross, Edward Kordell and Karl Ott to dismiss counts I and II (Paper 7) BE, and the same hereby IS, DENIED; and

2.   The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.